STROOCK & STROOCK & LAVAN LLP
PIERRE R. YANNEY (*Admitted Pro Hac Vice* - NY State Bar Reg. No. 261559
180 Maiden Lane
New York, N.Y. 10038
Telephone: (212) 806-5400
Facsimile: (212) 806-6006
Email:     pyanney@stroock.com
DANIEL A. ROZANSKY (State Bar No. 161647)
2029 Century Park East
Los Angeles, CA 90067-3086
Telephone:     310-556-5800
Facsimile:     310-556-5959
Email: lacalendar@stroock.com

Attorneys for Plaintiff
    **IPVX PATENT HOLDINGS, INC.**

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IPVX Patent Holdings, Inc.,<br><br>    Plaintiff,<br><br>vs.<br><br>VoxerNet LLC.,<br><br>    Cross-Defendant. | Case No. C 13-cv-01708-HRL<br><br>**PLAINTIFF IPVX'S OPPOSITION TO DEFENDANT VOXERNET'S MOTION TO REQUIRE IPVX TO POST AN UNDERTAKING** |

# **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ................................................................................................................1

II.   BACKGROUND .................................................................................................................2

III.  ARGUMENT ......................................................................................................................3

      A.     VoxerNet Cannot Possibly Show That This Is An Exceptional Case That Would Warrant Attorneys' Fees.............................................................................3

      B.     VoxerNet Has Not Shown That There Is A Reasonable Possibility That It Will Obtain Judgment...................................................................................................6

      C.     VoxerNet's Requested Costs And Attorney Fees Are Unreasonable.........................7

IV.  CONCLUSION ...................................................................................................................9

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*AF Holdings, LLC v. Magsumbol*,
  No. 12-4221 SC, 2013 WL 1120771 (N.D. Cal. Mar. 18, 2013) ..............................................4

*AF Holdings, LLC v. Trinh*,
  No. 12-2393-CRB, 2012 U.S. Dist. LEXIS 161394 (N.D. Cal. Nov. 9, 2012).................3, 4, 7

*Forest Labs., Inc. v. Abbott Labs.*,
  339 F.3d 1324 (Fed. Cir. 2003) .................................................................................................4

*Gabriel Technologies Corp. v. Qualcomm Inc.*,
  08 CV 1992 MMA POR, 2010 WL 3718848 (S.D. Cal. Sept. 20, 2010) .................................5

*Klausner Technologies, Inc. v. Vonage Holdings Corp.*,
  2:06CV275, 2007 WL 2300789 (E.D. Tex. Aug. 7, 2007) .......................................................6

*Pittman v. Avish P'ship*,
  CV 10-1390-JST OPX, 2011 WL 9160942 (C.D. Cal. June 2, 2011) *aff'd sub nom.
  Pittman ex rel. L.P. v. Avish P'ship*, 525 F. App'x 591 (9th Cir. 2013) ....................................3

*Prism Techs. LLC v. Verisign, Inc.*,
  579 F. Supp. 2d 625 (D. Del. 2008) ..........................................................................................4

*Voda v. Cordis Corp.*,
  536 F.3d 1311 (Fed. Cir. 2008) .................................................................................................7

*Wedgetail, Ltd. v. Huddleston Deluxe, Inc.*,
  576 F.3d 1302 (Fed. Cir. 2009) ............................................................................................3, 4

**STATUTES**

17 U.S.C. § 505 ...............................................................................................................................5

28 U.S.C. § 1404 .............................................................................................................................2

35 U.S.C. § 285 ......................................................................................................................1, 3, 4

California Code of Civil Procedure § 1030 ........................................................................1, 3, 4, 5

**OTHER AUTHORITIES**

http://www.oxforddictionaries.com/us/definition/american_english/telephone ............................6

Security for Costs, 10 Fed. Prac. & Proc. Civ. § 2671 (3d ed.) ......................................................3

Plaintiff IPVX Patent Holdings, Inc. ("IPVX") hereby opposes Defendant VoxerNet, LLC's ("VoxerNet") Motion to Require IPVX to Post an Undertaking.

## I. INTRODUCTION

When stripped of its rhetoric, VoxerNet's motion is thin on the law and any real argument. None of the cases cited by VoxerNet support its rather creative and novel theory requiring an undertaking to be posted in a patent infringement case, and for good reason – under the Patent Act, attorneys' fees are only awarded in "exceptional cases." *See* 35 U.S.C. § 285. Unsurprisingly, a search for federal cases requiring an undertaking under California Code of Civil Procedure § 1030 ("Section 1030" or "§1030") in the patent context does not turn up a single case involving a claim for patent infringement. VoxerNet has not, and cannot, show that this is an exceptional case *because it is not*. Moreover, VoxerNet fails to carry its burden that there is a reasonable possibility of obtaining judgment, and bases its entire motion on a narrow construction of a claim term without any evidentiary support. Finally, the amounts for costs and fees requested by VoxerNet are unreasonable and unsupported. For attorney fees, VoxerNet argues that it will spend 630 hours for summary judgment, 308 hours for patent disclosures and 240 hours on claim construction. (Saunders Dec. Ex. J) For costs, VoxerNet claims it will spend $25,000 for "charts, photographs and other exhibits" and $45,000 for expert consultants as part of its $82,700 in estimated costs. These numbers are simply unreasonable. Looked at objectively, $25,000 seems like quite a lavish expenditure for "charts and photographs." Similarly, to expend 630 hours for two summary judgment motions in a single patent case is beyond any reasonable imagination. Put in different terms, this is the equivalent of two attorneys working full time (40 hours per week), for nearly two months. Not only are these 1,178 hours of attorney time and $82,700 in costs patently unreasonable on their face, but VoxerNet fails to provide the requisite documentation for IPVX to even begin to challenge and address specific issues with these estimates and calculations.

For the reasons stated herein, VoxerNet's Motion to Require IPVX to Post an Undertaking should be denied.

## II. BACKGROUND

This case was originally brought by Klausner Technologies, Inc. ("Klausner Technologies"), an entity which bears the name of one of the inventors of the patent-in-suit, Judah Klausner, on March 20, 2012. Contrary to VoxerNet's insinuations, Klausner Technologies did not subsequently "vanish" unbeknownst to VoxerNet: Klausner Technologies assigned all right, title and interest in the patent-in-suit to IPVX on May 17, 2012; Plaintiff met and conferred with VoxerNet prior to moving to substitute IPVX as plaintiff; and VoxerNet did *not* oppose plaintiff's Motion to Substitute. Klausner Technologies filed its unopposed motion on May 18, 2012 and the Court granted the motion on June 6, 2012. The assignment document evidencing the transfer in ownership of the subject patent was an exhibit to the motion to substitute. (Dkt. 11, Ex. A)

VoxerNet answered the complaint on June 15, 2012 and moved to transfer under 28 U.S.C. § 1404 for forum non conveniens. (Dkts. 13, 15.) VoxerNet did *not* move to transfer on grounds that venue was improper and did not move to dismiss the complaint. The Court transferred the action to the Northern District of California on March 21, 2013. (Dkt. 35)

On August 26, 2013, VoxerNet served its first set of requests for production and interrogatories on IPVX. On October 7, 2013, IPVX served its first set of requests for production and interrogatories on VoxerNet. IPVX's discovery requests were directed to discrete, relevant categories of documents. (Saunders Dec. Ex. H) Moreover, IPVX prefaced each category of request with a relevant heading to make it easier for VoxerNet to provide its response even though it was not required to do so. *Id.* The requests were comprehensive to avoid any subsequent piecemeal back-and-forth on document production which would be more costly than a comprehensive set of requests for production up front. VoxerNet's statement that the discovery requests are "harassing" is simply not true.[1]

VoxerNet now seeks a bond in the amount of ***$749,000***.

---

[1] Whether VoxerNet's application answers and processes telephone calls is a matter of interpretation that the parties disagree on, and IPVX is entitled to confirm through discovery how VoxerNet monetizes and offers its products, and whether it owns any relevant trademark rights. If there are no such documents to produce, all VoxerNet has to do is say so. VoxerNet's arguments that IPVX's discovery requests are harassing is baseless. Moreover, with respect to request number 125, VoxerNet omits that the request also seeks documents relating more generally to any changes VoxerNet made in conducting its business following filing of the suit.

- 2 -
PLAINTIFF IPVX'S OPPOSITION TO DEFENDANT VOXERNET'S MOTION TO REQUIRE IPVX TO POST AN UNDERTAKING
Case No. C 13-CV-01708-HRL

### III. ARGUMENT

#### A. VoxerNet Cannot Possibly Show That This Is An Exceptional Case That Would Warrant Attorneys' Fees

Although the Court *may* in its discretion apply state practices in federal court, it can *only* do so when not inconsistent with federal legislation. *See AF Holdings, LLC v. Trinh*, No. 12-2393-CRB, 2012 U.S. Dist. LEXIS 161394 (N.D. Cal. Nov. 9, 2012) ("[C]ourts may apply state practice as a discretionary matter *when not inconsistent with federal legislation*."); § 2671 Security for Costs, 10 Fed. Prac. & Proc. Civ. § 2671 (3d ed.) (recognizing that "[i]n [cases brought under a federal statute] the district court's own rules or state practice may be applied as a discretionary matter *when not inconsistent with the federal legislation*"; "a federal court's discretion to require security for costs *should not be exercised in a manner that interferes with the policy of the underlying federal statute*"; and "[a]ccordingly, it has been held that security should not be demanded in actions under the Fair Labor Standards Act15 or the Federal Employers' Liability Act") (emphasis added); *see also Pittman v. Avish P'ship,* CV 10-1390-JST OPX, 2011 WL 9160942 (C.D. Cal. June 2, 2011) *aff'd sub nom. Pittman ex rel. L.P. v. Avish P'ship*, 525 F. App'x 591 (9th Cir. 2013) (finding that Defendant must show that there is a reasonable possibility of both obtaining judgment *and* "that Plaintiff's claims are frivolous, unreasonable, or without foundation" where the case law established that fees pursuant to the relevant federal statute "should be awarded to a prevailing defendant only if the plaintiff's action was frivolous, unreasonable, or without foundation" (citations omitted)).  Here, Section 285 of the Patent Laws provides that attorney fees may *only* be awarded "in exceptional cases" and, if Section 1030 can be applied *at all* in a patent infringement case, a showing that the case is "exceptional" must be made. 35 U.S.C. § 285 ("The court *in exceptional cases* may award reasonable attorney fees to the prevailing party.") (emphasis added)

The Patent Laws place a high bar on what constitutes an "exceptional case" for which attorneys' fees may be awarded.  It codifies for patent actions, a "bad faith" equitable exception to the American Rule, under which each party bears its own attorneys' fees and expenses. *Wedgetail, Ltd. v. Huddleston Deluxe, Inc.*, 576 F.3d 1302, 1304 (Fed. Cir. 2009) (*quoting Sun-Tek Indus., Inc.*

- 3 -

*v. Kennedy Sky Lites, Inc.*, 929 F.2d 676, 678 (Fed. Cir. 1991)).  The Federal Circuit has consistently found that "only a limited universe of circumstances warrant a finding of exceptionality in a patent case: 'inequitable conduct before the PTO; litigation misconduct; vexatious, unjustified, and otherwise bad faith litigation; a frivolous suit or willful infringement.'" *Wedgetail*, 576 F.3d at 1304 (*quoting Epcon Gas Sys., Inc. v. Bauer Compressors, Inc.*, 279 F.3d 1022, 1034 (Fed. Cir. 2002) (citations to additional cases omitted)). Absent litigation misconduct or inequitable conduct, an award of fees should be permitted "only if both (1) the litigation is brought in subjective bad faith, and (2) the litigation is objectively baseless." *Wedgetail*, 576 F.3d at 1309. Additionally, when a prevailing accused infringer seeks fees, the Federal Circuit has noted that § 285 "is limited to circumstances in which it is necessary to prevent a 'gross injustice' to the accused infringer." *Forest Labs., Inc. v. Abbott Labs.*, 339 F.3d 1324, 1329 (Fed. Cir. 2003).

This high burden of proof, and the limited set of circumstances under which a case may be deemed exceptional, are a reflection of the Federal Circuit's strong admonition "that an award of attorneys' fees under Section 285 is not intended to be an 'ordinary thing in patent cases,' and that it should be limited to circumstances in which it is necessary to prevent 'gross injustice' or bad faith litigation." *Prism Techs. LLC v. Verisign, Inc.*, 579 F. Supp. 2d 625, 628 (D. Del. 2008) (*quoting Forest Labs., Inc. v. Abbott Labs.*, 339 F.3d 1324, 1329 (Fed. Cir. 2003)) (emphasis added).

None of the California District Court cases that VoxerNet cites to, and which rely on Section 1030, are patent infringement cases, and the one case that involves a claim governed by the Patent Act is distinguishable on the facts. (Dkt. 68 at 9)  A fairly thorough and reasonable search of federal cases has not located a single patent infringement case that required an undertaking under Section 1030.

Both *AF Holdings, LLC v. Magsumbol*, No. 12-4221 SC, 2013 WL 1120771 (N.D. Cal. Mar. 18, 2013) and *AF Holdings, LLC v. Trinh*, No. 12-2393-CRB, 2012 U.S. Dist. LEXIS 161394 (N.D. Cal. Nov. 9, 2012) cited by VoxerNet involve copyright infringement and ***not*** patent infringement.  The fees provision for copyright infringement does ***not*** set the high bar for shifting fees that the Patent Laws do , and these cases are inapposite.   The Court in copyright cases is not

- 4 -

limited to "exceptional cases" in shifting attorney's fees; rather, the copyright statute governing costs and fees simply states that the court has the discretion to award a reasonable attorney's fee to the prevailing party. *See* 17 U.S.C. § 505 (providing that "the court in its discretion may allow the recovery of full costs by or against any party other than the United States or an officer thereof" and "the court may . . . award a reasonable attorney's fee to the prevailing party as part of the costs"). This is a much lower standard, than the "exceptional" case requirement of the Patent Laws.

Although in *Gabriel Technologies Corp. v. Qualcomm Inc.*, 08 CV 1992 MMA POR, 2010 WL 3718848 (S.D. Cal. Sept. 20, 2010) one of the claims involved inventorship under the Patent Laws, the facts there were egregious and there was little doubt the defendant would be able to prove the case was exceptional.[2]  Defendants presented email correspondences that the Court was convinced "create a logical inference that [Plaintiff] has suffered a long history of corrupt officers and directors who are not above taking illegal and fraudulent actions to guarantee their own personal gain." *Gabriel Technologies*, 2010 WL 3718848 at *14.  Additionally, there was a criminal judgment against a former consultant of the plaintiff and complaints filed against the plaintiff's former founder, president and chief operating officer, which the Court took judicial notice of.[3][4] *Id.* at *14 n.10.  The Court found that there was significant and unrebutted evidence of illegal and fraudulent action demonstrating plaintiff's brought the suit ***in bad faith*** and that "there is a strong likelihood Defendants will ultimately prove this case is exceptional, and attorneys' fees will be warranted at the conclusion of the litigation." *Id.* at *14.  There is absolutely no such evidence here, and VoxerNet has not identified any.

VoxerNet has not, ***and cannot***, show any bad faith on the part of IPVX in bringing this lawsuit ***because there was none***.  Moreover, as discussed below, VoxerNet cannot plausibly claim that IPVX's claims are objectively baseless.

---

[2] The claims centered on misappropriation of information, ***not*** patent infringement.
[3] Though the Court did not take judicial notice of "the truth of the facts recited therein."
[4] There was also evidence presented that the plaintiff had engaged in a sham change of residence to evade the requirements of section 1030. *Gabriel Technologies*, 2010 WL 3718848 at *3-4, 13.

### B. VoxerNet Has Not Shown That There Is A Reasonable Possibility That It Will Obtain Judgment

VoxerNet's sole argument is that "the claims of the '576 Patent require a telephone system" and that its product and service "does not use a telephone system." (Dkt. 68 at 11, 12)  However, the Eastern District of Texas rejected similar attempts by Vonage Holdings Corp. ("Vonage"), a defendant in an earlier case involving the patent-in-suit, to limit the claimed invention in the '576 Patent to traditional telephone systems. *See Klausner Technologies, Inc. v. Vonage Holdings Corp.*, 2:06CV275, 2007 WL 2300789 (E.D. Tex. Aug. 7, 2007). As recognized in VoxerNet's motion, the Court there rejected Vonage's argument that the prosecution history disclaimed computer-based voice messaging systems, suggesting that the '576 Patent was ***not*** limited to traditional telephone-based voice messaging systems. *See Id.* at *3-5.  The Court also rejected other, similar arguments trying to limit the invention to traditional telephony systems.  For example, Vonage argued that the telephone answering device described in the '576 Patent must be connected to the telephone by a "telephone line" and urged the Court to construe "coupled to a telephone" as "connected to the called party's telephone line,"  but the Court rejected this argument, instead construing the term as "connected to a telephone receiving an incoming call." *Id.* at *6.  Additionally, Vonage urged the Court to construe "first signals" as "signals received with a voice message recognizable by the telephone answering device and generally unique to the caller," but the Court recognized that it was described more broadly in the '576 Patent prosecution history, and broadly construed the term as "information." *Id.* at *6-7.  Additionally, the Court recognized the broad nature of a telephone answering device, noting that "[t]hroughout the '576 patent, the telephone answering device is described as a device that can receive, store and retrieve messages left by a calling party, i.e., messages coming in to a called party. See, e.g., '576 patent, col. 5:23–31, 34–40." *Id.* at *6.

VoxerNet's unsupported, narrow interpretation of "telephone" is inconsistent with the patent and prosecution history, and previous claim construction rulings.  According to the Oxford Dictionary, a telephone is "a system that converts acoustic vibrations to electrical signals in order to transmit sound, typically voices, over a distance using wire or radio." *See* http://www.oxforddictionaries.com/us/definition/american_english/telephone (Chadha Dec. Ex. A)

This is *exactly* how each of the devices that the VoxerNet app uses operates when using the application. VoxerNet has the burden of proving a reasonable possibility of judgment and puts forth no evidence other than attorney argument and a self-serving declaration by an individual named James T. Panttaja to suggest that the term telephone should be construed more narrowly. Interestingly, the Panttaja Declaration does not provide any background as to who Mr. Panttaja is, what his qualifications are, and whether he is affiliated with or has any relationship with VoxerNet. Despite arguing that its product does not use a telephone, VoxerNet does not even put forth a definition of "telephone," let alone any evidence that would support its extremely narrow interpretation.[5] Apparently, VoxerNet is arguing that a telephone must use a cellular network rather than a Wi-Fi network or a data network offered by a wireless carrier, but it provides absolutely no support for this limited definition.

Finally, even if VoxerNet's narrow interpretation of "telephone" is credited, VoxerNet's walkie-talkie application infringes under the doctrine of equivalents – it uses a device that performs substantially the same function, in substantially the same way, to yield substantially the same result as a telephone. *See, e.g., Voda v. Cordis Corp.,* 536 F.3d 1311, 1327 (Fed. Cir. 2008). The VoxerNet walkie-talkie application operates functionally like a telephone and answering machine. It operates through a device that allows people to speak with each other in "near real-time," i.e., a telephone, and allows for the receipt, storage and retrieval of voice messages, i.e., an answering machine. (Panttaja Dec. at ¶3-7.) Additional, in the Panttaja Dec. at ¶4, Mr. Panttaja states that a user of the application has an option to participate in a "conversation" with another Voxer user, which would be exactly the same thing as a "telephone call." Tellingly, VoxerNet does not even discuss how it could possibly avoid infringement under a doctrine of equivalents theory.

### C. VoxerNet's Requested Costs And Attorney Fees Are Unreasonable

Finally, the amounts for costs and fees requested by VoxerNet are just unreasonable. *See, e.g., AF Holdings, LLC v. Trinh,* No. 12-2393-CRB, 2012 U.S. Dist. LEXIS 161394 (N.D. Cal. Nov. 9, 2012) (finding the hourly breakdown proposed by Plaintiff's counsel to be excessive and

---

[5] Additionally, VoxerNet admits that the infringing product is also used on a smartphone, and a smartphone would be understood by *anyone* as a "telephone."

- 7 -
PLAINTIFF IPVX'S OPPOSITION TO DEFENDANT VOXERNET'S MOTION TO REQUIRE IPVX TO POST AN UNDERTAKING
Case No. C 13-CV-01708-HRL

reducing it by half).  For attorney fees, VoxerNet argues that it will spend 630 hours for summary judgment, 308 hours for patent disclosures and 240 hours on claim construction. (Saunders Dec. Ex. J)  These 1,178 hours of attorney time are patently unreasonable on their face and VoxerNet does not even provide the documentation that would allow IPVX to address the specifics of the calculation.  Put in perspective, this number of hours corresponds to two attorneys working full time (40 hours per week) for close to four months.  That is indeed quite a lot of work to prepare for two summary judgment motions for four patent claims.  The 240 hours represent a single attorney working full time for six weeks to come up with the proposed claim constructions for the same four claims.

VoxerNet argues that they created a model budget based on "similar recently-litigated cases," and provides the "fee estimate as generated from the above referenced model budget," but does not provide any documentation on this "model budget." (Saunders Dec. ¶5-8)  Additionally, IPVX has no way of assessing whether these other cases are in fact "similar." (*Id.*)  In the instant action, IPVX is presently asserting four claims of a single patent against a single defendant with one accused product. (Saunders Dec. Ex. B)

For costs, VoxerNet provides an estimate of $25,000 for charts, photographs and exhibits as well as $45,000 for expert consultants.  These $70,000 in costs (part of the overall estimate of $82,700 in costs) are absolutely unjustified and unreasonable on their face.  VoxerNet has not identified who these experts are, what subject matter they will be engaged for, what their hourly fee is, how much they expect to work.  All that is provided is a single line item that says "45,000."  As to the $25,000 for "charts, photographs, and exhibits" presumably to be used in a one-hour summary judgment presentation, one is simply left to wonder in anticipation and amazement as to what these exorbitantly priced charts and photographs will look like. As with the attorney fees, VoxerNet puts forth scant justification and support for these outlandish numbers.  VoxerNet simply states that its law firm's "budgeting department . . . provided an estimate of VoxerNet's costs," and all VoxerNet provides is the outcome, and that the Court should simply believe these numbers. (Saunders Dec. ¶10).

## IV. CONCLUSION

For the foregoing reasons, the Court should deny VoxerNet's Motion to Require IPVX to Post an Undertaking.

Dated:  December 6, 2013         STROOCK & STROOCK & LAVAN LLP
                                 PIERRE R. YANNEY
                                 DANIEL A. ROZANSKY

                                 By: _/s/ Pierre R. Yanney_____
                                       Pierre R. Yanney
                                       Daniel A. Rozansky

                                 Attorneys for Plaintiff
                                   IPVX PATENT HOLDINGS, INC.

## CERTIFICATE OF SERVICE

I hereby certify that on December 6, 2013, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record.

/s/ Pierre R. Yanney
Pierre R. Yanney