J. DAVID HADDEN (CSB No. 176148)
dhadden@fenwick.com
HECTOR J. RIBERA (CSB No. 221511)
hribera@fenwick.com
MICHAEL C. SAUNDERS (CSB No. 270414)
msaunders@fenwick.com
FENWICK & WEST LLP
Silicon Valley Center
801 California Street
Mountain View, CA 94041
Telephone:    (650) 988-8500
Facsimile:    (650) 938-5200

Attorneys for Defendant and
Counterclaimant
VOXERNET, LLC

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IPVX PATENT HOLDINGS, INC., a Delaware Corporation,<br><br>        Plaintiff-Counterdefendant,<br><br>v.<br><br>VOXERNET, LLC, a Delaware limited liability company,<br><br>        Defendant-Counterclaimant | Case No. C 13-cv-01708 HRL<br><br>**DEFENDANT VOXERNET LLC'S REPLY TO PLAINTIFF IPVX PATENT HOLDINGS, INC'S OPPOSITION TO VOXERNET'S MOTION TO REQUIRE IPVX TO POST AN UNDERTAKING**<br><br>Hearing Date: February 4, 2014<br>Hearing Time: 10:00 a.m.<br>Courtroom 2 – 5th Floor<br>Judge: Hon. Howard R. Lloyd<br>Date Action Filed: March 20, 2012 |

## I. INTRODUCTION

Defendant VoxerNet, LLC ("VoxerNet") has shown it has a reasonable possibility that it will obtain judgment that Plaintiff IPVX Patent Holdings, Inc.'s ("IPVX") infringement theory is frivolous and that this case is exceptional. After nearly two years of litigation IPVX has never articulated any theory of how VoxerNet's Voxer Walkie Talkie application ("Voxer app") could infringe claims requiring a telephone answering device that automatically answers incoming telephone calls and is "coupled to a telephone." IPVX's opposition brief continues to offer nothing in this regard. Even accepting IPVX's new definition for the term "telephone" only begs the question of what aspect of the Voxer app could be "coupled to" such a telephone and how the Voxer app could answer an incoming "telephone" call. When pressed, IPVX simply waves its hands over the doctrine of equivalents but fails to explain how anything is the functional equivalent of the telephone limitations of the claims. For these reasons, as explained more fully below and in VoxerNet's opening brief, IPVX's infringement allegations are frivolous and VoxerNet has shown that it has a reasonable possibility of proving that this case is exceptional.

IPVX's opposition brief also offers nothing to assuage VoxerNet's legitimate concerns that IPVX will leave it without recourse to recover its fees and costs. IPVX still refuses to produce any documents relating to its financial health or available resources to pay for VoxerNet's litigation expenses. And IPVX does not contest that it is an out-of-state shell corporation with no employees organized solely for the purpose of pursuing patent litigation involving the '576 patent. The only person IPVX identified as having knowledge of IPVX's activities is Gary Lieb, and he is vaguely referred to only as IPVX's "representative." IPVX also does not seriously contest that it has no real intention of prevailing on the merits of its case and seeks only to engage in harassing and burdensome litigation in order to pressure VoxerNet into a settlement. This is especially evident in light of the fact that IPVX's claim for damages will likely be limited to a reasonable royalty based on only eleven days of indirect infringement by a free software application.

The Court should grant VoxerNet's motion and require IPVX to post a bond in the amount of $749,000 for VoxerNet's costs and attorneys' fees in the action.

## II. ARGUMENT

### a. The Court Has Authority to Require IPVX to Post a Bond in the Amount of VoxerNet's Anticipated Fees and Costs in This Litigation

IPVX does not dispute that it is an out-of-state corporation. The only other requirement in the statute is that VoxerNet show a "reasonable possibility" of obtaining a judgment of non-infringement in order for the Court to require a bond for VoxerNet's projected costs in this litigation. (*See generally* Dkt. No. 71, IPVX's Opposition to VoxerNet's Motion ("Opp. Br.") at 3-4.) IPVX instead challenges the Court's authority to require IPVX to post a bond to cover VoxerNet's expected attorneys' fees. (*Id.*)

Contrary to IPVX's arguments, to require a bond covering VoxerNet's expected attorneys' fees the Court does not need to decide now whether this case is exceptional under the Patent Act, nor is there any inconsistency between the Patent Act and California law. Instead, the Court only needs to find that there is "a reasonable possibility that the moving defendant will obtain judgment in the action" entitling it to attorneys' fees. California Code of Civil Procedure § 1030(b). That possibility is present through the inherent powers of the Court under Rule 11 as well as under the Patent Act. Federal courts have authority under Rule 11 to require plaintiffs to cover defendants' attorneys' fees where a patent infringement action is frivolous or under the Patent Act when the case is deemed exceptional. *See* Fed. R. Civ. P. 11(c); 35 U.S.C. § 285 (providing that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party"); *see also Eon-Net LP v. Flagstar Bancorp*, 653 F.3d 1314, 1326-29 (Fed. Cir. 2011), *cert. denied*, 132 S. Ct. 2391 (2012) (affirming award of attorneys' fees under Rule 11 and the Patent Act where non-practicing patentee pursued baseless infringement allegations in bad faith and for an improper purpose). There is nothing inconsistent between the Patent Act and the inherent powers of the court to grant attorney's fees.

As explained in VoxerNet's opening brief, district courts typically "follow the forum state's practice with regard to security for costs, as they did prior to the federal rules; this is especially common when a non-resident party is involved." *Simulnet E. Assocs. v. Ramada Hotel Operating Co.*, 37 F.3d 573, 574 (9th Cir. 1994); *see also In re Merrill Lynch Relocation Mgmt.,*

*Inc.*, 812 F.2d 1116, 1121 (9th Cir. 1987) (recognizing "[f]ederal courts have inherent authority to require plaintiffs to post security for costs."). The Ninth Circuit has also generally recognized the appropriateness of requiring a bond securing costs and attorney fees. *See Kourtis v. Cameron*, 358 Fed. Appx. 863, 868 (9th Cir. 2009) (unpublished) (affirming imposition of a bond covering expected costs and attorney fees pursuant to the standard set forth in § 1030). And the Northern District of California has required security for attorneys' fees and costs in a series of recent federal copyright cases. *See*, *e.g.*, *AF Holdings, LLC v. Magsumbol*, No. 12-4221 SC, 2013 WL 1120771 (N.D. Cal. Mar. 18, 2013) (requiring bond covering defendant's expected costs and attorney fees pursuant to § 1030); *AF Holdings, LLC v. Trinh*, No. 12-2393-CRB, 2012 U.S. Dist. LEXIS 161394 (N.D. Cal. Nov. 9, 2012) (same).

Though IPVX is correct that the standard for awarding attorneys' fees differs between patent and copyright law, it cites to no authority suggesting that a bond could not be required of an out-of-state shell corporation asserting frivolous and unjustified patent infringement claims. At least one court in the Ninth Circuit has already relied on the Patent Act's authority to award attorneys' fees when requiring a bond pursuant to § 1030. *Gabriel Techs. Corp. v. Qualcomm Inc.*, 08 CV 1992 MMA POR, 2010 WL 3718848, at *13-14 (S.D. Cal. Sept. 20, 2010) (finding that attorneys' fees should be incorporated into the bond amount under § 1030 because attorneys' fees are permitted under CUTSA and the Patent Act; noting that bond covering defendants' attorneys' fees was appropriate where "there [was] a strong likelihood Defendants will ultimately prove this case is exceptional, and attorneys' fees will be warranted at the conclusions of the litigation").

**b. VoxerNet Has a Reasonable Possibility of Obtaining a Judgment That Would Entitle It to Recover Costs and Attorneys' Fees**

As noted above and in VoxerNet's opening brief, each of the claims asserted by IPVX in this litigation requires an infringing device to "automatically answer[] incoming telephone calls and stor[e] and retriev[e] information from the incoming telephone calls with a telephone answering device," said "telephone answering device having a memory and being coupled to a telephone[.]" (Dkt. No. 70, Saunders Decl. ¶ 11, Ex. A, '576 Patent, at claims 3, 4, 18, 19; Ex. B,

1   IPVX's Local Patent Rule 3-1 Disclosures, at 2 (identifying claims 3, 4, 18 and 19 as the

2   "Asserted Claims.")) Prior to the '576 patent's expiration, the Voxer app did none of these things

3   because it operated like a digital version of a "walkie talkie" radio. Indeed, the Voxer app made

4   no use of a conventional telephone system, any cellular telephone circuitry of a smartphone, or

5   any Voice-over-Internet-Protocol ("VoIP") technology. (*See* Dkt. No. 69 Panttaja Decl., ¶ 3.)[1] In

6   other words VoxerNet's product made no use of any "telephone," however that term might

7   reasonably be defined.

8         Yet IPVX continues to press its claims. As predicted in VoxerNet's opening brief, IPVX

9   relies on the court's opinion in *Klausner Techs., Inc. v. Vonage Holdings Corporation* to argue

10  that its patent should not be limited to "traditional telephony systems."[2] (Opp. Br. at 6 (citing

11  *Klausner Techs., Inc. v. Vonage Holdings Corp.*, No. 2:06-CV-275, 2007 WL 2300789 (E.D.

12  Tex. Aug. 7, 2007)); *cf.* (Dkt. No. 70-1, Saunders Decl., Ex. A, '576 patent, 1:24-30, 1:54-67,

13  2:43-45, 3:66-4:3, 5:64-6:6, 6:25-34, Figs. 1, 3 (describing a system having a standard telephone

14  handset, receiving a dial tone, waiting a specified number of rings before answering an incoming

15  call, and interpreting dual tone-touch tone frequencies (DTMF).)) But even if that were true, the

16  court did not hold that IPVX's patent could be broadly construed to read onto any conceivable

17  "computer based voice message system," including those that make no use of a telephone and do

18  not answer incoming telephone calls. *See Klausner Techs.*, at *5. Rather, the court held that the

19  claim term at issue—"automatically answering incoming telephone calls"—should be given its

20  plain and ordinary meaning because this phrase would be "understandable to a juror in the context

21  of the claims at issue." *Id.* In other words, the '576 patent requires actually answering incoming

22  telephone calls. Such interpretation was consistent with the court's other constructions. *Id.* at *6

23  (construing "telephone answering device" as "an electronic device for answering an incoming

---

[1] James T. Panttaja previously explained to IPVX that he is Vice President of Corporate Development for Voxer. (*See* Dkt. No. 15-1, Panttaja Declaration, ¶ 2.)

[2] In the *Vonage* case, IPVX's predecessor had accused Vonage's "central computer-based voice mail system" of infringing claims 3 and 4 of the '576 patent. *See* Vonage's Responsive Claim Construction Brief, No. 2:06-cv-00275-LED-JDL, Dkt. No. 95, at 10 (E.D. Tex., May 9, 2007). Because Vonage appears to be a VoIP telephone service provider, the allegedly infringing activities in that case would most likely have involved making telephone calls through a computer network.

call" and "coupled to a telephone" as "connected to a telephone receiving an incoming call"). Even if one were to credit IPVX's argument that the *Vonage* court was not limiting the '576 patent to "traditional telephony systems" (which is highly debatable), it certainly does not follow that the '576 patent could be infringed by a device using no telephone system at all.

Rather than recognizing this, IPVX attempts to shift the burden onto VoxerNet by arguing that it did not provide an adequate definition for "telephone"—a device with which everyone in America has been intimately familiar for decades—and offers an extremely generic definition for that term. (Opp. Br. at 6) (noting that the Oxford Dictionary defines a telephone as "a system that converts acoustic vibrations to electrical signals in order to transmit sound, typically voices, over a distance using wire or radio.") One obvious problem with IPVX's definition, however, is that it would cover devices that convert acoustic vibrations for transmission to AM/FM radios or to television sets; even a microphone connected to an amplifier "over a distance using a wire" would be a telephone under IPVX's definition. Yet even accepting this flawed definition, it only begs the question of how the Voxer app is actually "coupled to" such a telephone and how it "answer[s] incoming telephone calls." IPVX never explains. (*See* Opp. Br. at 7 (baldly arguing instead that "[t]his is *exactly* how" the Voxer app works) (emphasis in original); *see also* Dkt. No. 70-2, Saunders Decl., Ex. B, IPVX's Local Rule 3-1 Disclosures, Appx. A, at 4-5, 23-24 (identifying no features of VoxerNet's product that could meet the telephone limitations of the claims).)

IPVX's arguments for infringement under the doctrine of equivalents fare no better. IPVX's bare reliance on boilerplate and conclusory contentions shows that it has no actual theory under this doctrine, (*Id.* at Appx. A, at 4-5, 23-24), and the explanations advanced for the first time in its opposition brief (which are absent from its Patent L.R. 3-1 mandatory infringement disclosures) have obvious flaws, (Opp. Br. at 7). IPVX argues there that the Voxer app infringes by equivalents because it "operates through a device that allows people to speak with each other in 'near real-time,' i.e. a telephone, and allows for the receipt, storage and retrieval of voice messages, i.e. an answering machine." (*Id.*) But such argument does not address the fact that the Voxer app functions only through asynchronous communication, just as a walkie talkie functions

1 differently than a telephone. (Dkt. No. 69, Panttaja Decl., ¶ 4.) Nor does IPVX's argument account for the fact that all incoming messages are stored as they are received on the user's device—i.e. there is no functional equivalent of "answering incoming telephone calls."

Further, the Court does not need to decide the infringement issue to require the posting of a bond. As VoxerNet has shown, there is more than a reasonable possibility for VoxerNet to prevail. IPVX's far-fetched and newly developed doctrine of equivalents theories do not show otherwise. Accordingly, VoxerNet has shown that it has a reasonable possibility of obtaining a judgment in this case.

### c. VoxerNet's Costs and Fees Estimates are Reasonable

IPVX does not contest the reasonableness of 802 of VoxerNet's hours defending this litigation. (*See* Dkt. No. 70-10, Saunders Decl., Ex. J (hours for fact investigation, legal research, expert and consultation, ADR/settlement, pleadings, motions challenging pleadings (i.e. VoxerNet's motion to transfer), written discovery, document review/production, protective order, depositions and for the upcoming *Markman* hearing and tutorial).) IPVX also does not contest $12,000 of VoxerNet's expected costs. Such uncontested fees and costs amount to $282,611.

#### i. Contested Attorneys' Fees

IPVX focuses its opposition brief on the hours VoxerNet estimates will be needed for summary judgment, invalidity contentions, and claim construction. (Opp. Br. at 8.)

As explained earlier, VoxerNet's model for projecting the hours that would be needed for summary judgment was based on the assumption that VoxerNet will bring two motions for summary judgment: the first for non-infringement, and the second for either invalidity or to limit damages to the period between the filing of IPVX's complaint and the date of the '576 patent's expiration (eleven days later). (Dkt. No. 70, Saunders Decl., at ¶ 7.) VoxerNet also expected that it will need to defend against at least two motions for summary judgment brought by IPVX. As should have been obvious to IPVX, significant amounts of attorney time will be needed to research, draft, prepare accompanying factual declarations, and to file and argue these motions. Given the typical length and complexity of summary judgment motions in patent cases, it was not unreasonable for VoxerNet to estimate that its team of attorneys would need to spend 158 hours

on each of the four motions.

IPVX also takes issue with the 308 hours VoxerNet estimates will be needed for patent disclosures but offers no explanation for why such amount of time is unreasonable. (Opp. Br. at 7-8.) As with any typical preparation of invalidity contentions, large numbers of attorney hours are spent locating relevant prior art references, reviewing and analyzing the strength of each reference, drafting dozens of invalidity charts, and drafting a detailed cover pleading explaining VoxerNet's invalidity theories. (*See* Dkt. No. 70-10, Saunders Decl., Ex. J (identifying the hours needed for patent disclosures as comprising "contentions, prior art, [and] review and analysis")); *see also* Patent Local Rule 3-3(c). VoxerNet has already expended significant amounts of time locating more than fifty references that it believes constitute prior art to the '576 patent-in-suit. Much more time is needed to chart these references and draft VoxerNet's cover pleading.

IPVX also challenges the 240 hours VoxerNet estimates will be needed for claim construction. As should be apparent to IPVX from the patent local rules requirements of this District, VoxerNet's counsel will need to: (1) research and prepare a list of proposed terms for construction; (2) draft preliminary claim constructions after analyzing the patent and relevant extrinsic evidence; (3) review, identify and produce all extrinsic references and references from the patent specification and prosecution history that support VoxerNet's constructions; (4) draft and provide a description of the substance of any witness testimony that VoxerNet will offer in support of its claim constructions; (5) assist with jointly drafting a claim construction and prehearing statement; (6) engage in claim construction discovery; and (7) draft claim construction briefs. *See* Patent Local Rules 4-1 through 4-6.

Of course, VoxerNet's number of hours for summary judgment, invalidity contentions and claim construction are only estimates, as they must be at this stage. Should the Court find that these estimates are too high, it may apply its discretion to reduce them to a number that it deems appropriate. *See Magsumbol*, 2013 WL 1120771, at *2 (reducing requested bond amount after finding defendant's estimate of hours was excessive); *see also Gabriel Techs.*, 2010 WL 3718848, at *15 (exercising discretion to reduce requested bond amount).

  **ii. Contested Costs**

IPVX also objects to some of VoxerNet's requested costs. In particular it complains that the $25,000 VoxerNet has estimated for exhibits and a technical claim construction tutorial for the upcoming claim construction and summary judgment hearings is too expensive. Such tutorials usually comprise an hour-long video presentation, which is technically detailed and time-consuming to prepare, and will require VoxerNet to hire the assistance of an outside graphics vendor. These efforts will require significant expense which has been estimated at $25,000.

IPVX also complains that $45,000 for expert consultation fees is too costly. VoxerNet has not yet hired an expert consultant in this matter so it does not have more specific billing rate information to offer. The $45,000 figure provided is merely a best estimate of the expected costs of hiring an expert to advise VoxerNet through the claim construction process and July 2, 2014 *Markman* hearing. As with the attorneys' fees figures, VoxerNet can only provide reasonable estimates for these costs at this time.

## III. CONCLUSION

For the reasons set forth above, VoxerNet's Motion to Require Plaintiff IPVX to Post an Undertaking should be granted. The Court should therefore require IPVX to post a bond for VoxerNet's fees and costs in the amount of $749,000.

Dated: December 13, 2013    Respectfully Submitted,

                  By: /s/ Hector J. Ribera
                     Hector J. Ribera

                     Attorneys for Defendant
                     VOXERNET, LLC

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 13th day of December, 2013, a true and correct copy of the foregoing was filed with the Clerk of the Court using the CM/ECF system and served on all of those parties receiving notification through the CM/ECF system.

/s/ Michael C. Saunders
Michael C. Saunders