Pages 1 - 20

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Howard R. Lloyd, Magistrate Judge

| | |
|---|---|
| IPVX PATENT HOLDINGS, INC.   ) | |
|   ) | |
|       Plaintiff,   ) | |
|   ) | |
| VS.   ) | NO. 5:13-cv-01708 |
|   ) | |
| VOXERNET LLC   ) | |
|   ) | |
|       Defendant.   ) | |
| _____) | |

SAN FRANCISCO, CALIFORNIA
TUESDAY, FEBRUARY 4, 2014

**TRANSCRIPT OF PROCEEDINGS OF THE OFFICIAL ELECTRONIC SOUND
RECORDING**

**APPEARANCES:**

For Plaintiff:          Stroock & Stroock & Lavan LLP
                              180 Maiden Lane
                              New York, NY 10038
             BY:  **PIERRE YANNEY, ATTORNEY AT LAW**
                   **DE PAUL CHATA (UNKNOWN)**

For Defendant:          Fenwick & West, LLP
                              Silicon Valley Center
                              801 California Street
                              Mountain View, CA 94041-2008
             BY:  **HECTOR RIBERA, ATTORNEY AT LAW**
                   **MICHAEL SAUNDERS, ATTORNEY AT LAW**

Transcribed:          Carrie E. McKee-Parks
                              Transcriber 510-637-9897
                              McKee-Parks65@att.net

```
 1    Tuesday, February 4, 2014                    10:38 a.m.

 2                       P R O C E E D I N G S

 3                          ---oOo---

 4          THE COURT:  Okay.  IPVX Patent Holdings v. Voxernet.

 5          MR. YANNEY:  Good afternoon, your Honor.  This is

 6    Pierre Yanney and De Paul Chata (phonetic) in New York on

 7    behalf of plaintiff, IPVX.

 8          MR. RIBERA:  Good morning, your Honor.  Hector Ribera

 9    and my colleague, Michael Saunders, for defendant, Voxernet.

10          THE COURT:  Hello, Mr. Yanney and Mr. -- is it

11    Ribera?

12          MR. RIBERA:  Ribera.

13          THE COURT:  Ribera.  Okay.  I can't read my courtroom

14    deputy's writing here.

15       So IPVX's for infringement of its 576 patent, which is a --

16    described to me as a telephone answering device linking

17    displayed data with recorded audio messages.

18       And I think in plainer language, that means that the

19    infringement -- the infringing activity deals with a device

20    that answers phone calls, records voice messages, and then

21    allows the user to select and retrieve stored messages out of

22    order from the way -- from the way in which they were received.

23       Defendant Voxernet offers or did offer a free push to talk

24    Walkie Talkie software application that allows registered users

25    to send audio, text, and photo messages to other registered
```

1     users over a local Wi-Fi network or a data network offered by a

2     wireless carrier.

3          Just help me out here, Mr. Ribera; what kind of a device

4     would I be using if I had -- had downloaded this particular

5     App?

6               MR. RIBERA:  So you can use any IOS or Android

7     device, like an iPad or iPhone or any tablet device or anything

8     like that that can communicate through a Wi-Fi network or data

9     network.

10              THE COURT:  And why would I -- I'm just curious.  Why

11    would I want to do this?

12              MR. RIBERA:  So the -- it's a Walkie Talkie App.

13    There's a lot of different messaging applications out there;

14    there's text messaging; there's e-mail.

15              THE COURT:  Right.

16              MR. RIBERA:  And the differentiating factor of

17    Voxernet Walkie Talkie App is that it begins streaming your

18    information as soon as you begin providing it to the device so

19    you don't have to wait until your picture has fully uploaded to

20    a server and then send it to somebody else.

21          As soon as you start beginning, like, you start talking on

22    to the device, it starts streaming the data to the servers.  So

23    it's a little bit faster than other messaging services.

24              THE COURT:  Okay.  So under California Code of Civil

25    Procedure 1030, the defendant, Voxernet, moves for an order

1    requiring the plaintiff to post a bond; the suggested amount of

2    $749,000; to cover Voxernet's costs and fees in the event that

3    it prevails in this lawsuit.

4        Plaintiff is a patent assertion entity.  Plaintiff does not

5    concede that California CCP 1030 applies to patent cases.

6    Certainly, not at the Federal law's inconsistent and points to

7    the 35 U.S. Code 285, which allows recovery of fees and costs

8    in-quote, extraordinary, unquote, patent cases.

9        But Section 285, that's a fee shifting provision after the

10   case is over, as I understand it; right?

11             MR. RIBERA:  That's correct, your Honor.

12             THE COURT:  So there isn't anything that directly

13   applies or provides authority -- maybe that's a better way to

14   put it -- for the Court to impose a bond at the get-go in a

15   patent case?

16             MR. RIBERA:  We believe the *Simulent* case from the

17   Ninth Circuit provides authority to the Court.  And actually,

18   recognizes that Federal Courts already have the authority to

19   impose a bond.

20             THE COURT:  What case is that?

21             MR. RIBERA:  *Simulent*.  It's -- we cited it in our

22   briefing.

23             THE COURT:  What's the authority -- what authority

24   did *Simulent* rely on?  How do you spell that?

25             MR. RIBERA:  It's S-i-m-u-l-n-e-t (sic).  And it's 37

1    F.3d 573; Ninth Circuit.

2              THE COURT:  So what was the authority?

3              MR. RIBERA:  So in *Simulent*, the Ninth Circuit was

4    applying -- or was reviewing the case in which Section 1035 was

5    being applied in a Federal context.  And it recognized that

6    Federal Courts have that power, even though the Federal Rules

7    do not provide for bond provisions.

8              THE COURT:  What were the facts?  What were the

9    facts?  Was it a patent case?

10             MR. RIBERA:  It was not a patent case, your Honor.

11   The patent case where this was raised was a *Gabriel*

12   *Technologies* case.

13             THE COURT:  Yeah, I know.  But there, the evidence

14   that the Court considered showed the downright criminal

15   activity on the part of the plaintiff.  It was pretty

16   egregious.

17             MR. RIBERA:  Right.  But the Court in that case

18   recognized that the case -- in that case, the defendants were

19   likely to get the fee shift provision in Section 285, but

20   that's not why it was required at that stage.  Only a

21   reasonable possibility that they could get the fees was

22   required and that's all that's required at this stage of the

23   case.

24        We don't want you to decide the ultimate issue, which is

25   kind of what the plaintiff's brief implies.  But at this point,

1        you need to decide that this is an exceptional case --

2                    THE COURT:  Right.  Right.

3                    MR. RIBERA:  -- and that's a really high burden.

4                    THE COURT:  I haven't even gotten into the case.

5        It's hard for me at this point to say that; A, you're going to

6        win; and B, that I'm going to feel it's an extraordinary case;

7        and therefore, shift fees under 35 U.S. Code 285.  I mean,

8        that's -- we're not there yet.

9                    MR. RIBERA:  That's correct, your Honor.

10                   THE COURT:  So then what test should I use to decide

11       at this point; which is highly unusual, of course.  There are

12       so few cases on it.  What test do I use at this point to decide

13       whether you should get it or not?

14                   MR. RIBERA:  So it's only a reasonable possibility

15       that we will prevail.  That's the task.  *AF Holdings* -- there

16       are several *AF Holdings* cases that recognize it's a pretty low

17       threshold.

18                   THE COURT:  You can say that in almost every case,

19       couldn't you?

20                   MR. RIBERA:  I think you could, your Honor.  It's a

21       pretty low threshold as recognized by the cases.

22                   THE COURT:  But hardly anybody grants this kind of a

23       motion.

24                   MR. RIBERA:  All the cases cited by parties has been

25       granted.

```
1              THE COURT:  Two.
2              MR. RIBERA:  The AF Holdings cases; both of them were
3    granted.  There's another AF Holdings case we didn't cite where
4    it was also granted.
5        Even some of the cases cited -- the Gabriel Technologies
6    case, it was also granted.  Pretty much every case that the
7    parties cited, the Court granted the bond.
8              THE COURT:  Well, seriously, if the test is
9    reasonable possibility -- reasonable possibility?
10             MR. RIBERA:  Yes.
11             THE COURT:  Not probability?
12             MR. RIBERA:  Correct.  Reasonable possibility.  Your
13   Honor, the point --
14             THE COURT:  Well, that's kind of like 50/50 then,
15   isn't it?
16             MR. RIBERA:  It's even less than 50/50, I think, your
17   Honor.
18       The point is not -- you're not telling them that they need
19   to pay us anything; they just need to post the bond so that in
20   the event that we prevail, we don't have to go after them.
21             THE COURT:  I know.  But if this was as easy as you
22   seem to be positing it, defendants would make this motion in
23   every case and they don't.
24             MR. RIBERA:  Maybe you will see it more often if you
25   grant this motion, your Honor.
```

1        THE COURT:  Well, if it's as easy as you say or as

2    obviously as you say or as likely as you say, then why on Earth

3    would we need this new legislation, which is under

4    consideration; 285(a), which hasn't been passed, which would

5    specifically give the Court the right to require a bond at the

6    get-go in a patent case?

7        MR. RIBERA:  Because not every case may have

8    California Civil Procedure Section 1035 or not every state may

9    have that -- that statute in place for Federal Courts to apply.

10        THE COURT:  You know that's the case?

11        MR. RIBERA:  I do not know, your Honor.  I just know

12    that in California we do have it.

13        THE COURT:  Okay.  Well, what makes this case in

14    which I should decide, having not done a claim construction or

15    anything else, that there's a reasonable possibility --

16        MR. RIBERA:  Possibility.

17        THE COURT:  -- that you're going to win?

18        MR. RIBERA:  So the patent, as you mentioned, your

19    Honor, is about a telephone answering machine.

20        THE COURT:  Right.  And you correctly point out

21    that -- apparently correctly.  I shouldn't say -- I shouldn't

22    assume something there -- that you're not dealing with

23    telephone calls.

24        MR. RIBERA:  That's right, your Honor.

25      With the Voxer Walkie Talkie App, there's no way to dial a

1   phone number; there's no telephone calls; there's no answering

2   machine for telephone calls.  Everything that's described in

3   the patent and recited in the claims related to telephone calls

4   is just not --

5          THE COURT:  No, I understand that.  I read the

6   papers.

7       And the plaintiffs says, well, if it walks like a duck and

8   looks like a duck, it's probably a duck.  And Doctrine of

9   Equivalence and all that stuff, you know.  And again -- that

10  sounds possible to me --

11         MR. RIBERA:  Well --

12         THE COURT:  -- using your test it's possible.

13         MR. RIBERA:  Two points, your Honor.  The test is

14  whether the defendant has a reasonable possibility of

15  prevailing, not whether the plaintiff has a reasonable

16  possibility of --

17         THE COURT:  By the way, where did that reasonable

18  possibility come from?

19         MR. RIBERA:  From the statute.

20         THE COURT:  Which statute?

21         MR. RIBERA:  California Civil Procedure Section 1035.

22         THE COURT:  Correct.

23         MR. RIBERA:  And it's also being recognized in the *AF

24  Holdings* cases.  You can look at the *Magsumbol* case we cited in

25  our briefing and it points out that it's a pretty low

1    threshold.  The Court there said --

2         THE COURT:  But that's -- that California statute

3    also says under this low threshold that you could get -- the

4    Court could impose a bond to cover attorneys' fees if there was

5    an underlying statute or contract that granted the terms.

6         MR. RIBERA:  Correct, your Honor.

7         THE COURT:  Okay.  Well, this isn't exactly that case

8    because the underlying statute that you're -- that you would

9    refer to is 285, which is not simply a sweeping "you get your

10   attorneys' fees" statute.  It's "you get your attorneys' fees

11   if and only if" -- and this, I think, is construed very

12   strictly -- "it's an extraordinary case."

13        MR. RIBERA:  That's --

14        THE COURT:  So that does not fit neatly into the

15   parameters of the CCP.

16        MR. RIBERA:  So that same issue came up in the

17   *Gabriel Technologies* case where there was a patent involved.

18   And the Court there explained that it's the same test.  It's

19   the reasonable possibility.  Is there a reasonable possibility

20   that fees would be granted under 35 U.S. Section 285.

21        THE COURT:  Is that *Gabriel Technologies*?

22        MR. RIBERA:  Yes, your Honor.

23        THE COURT:  Okay.  That's the case with egregious

24   conduct; the history of corruption; the officers have been

25   criminally convicted of wrongdoing or some of them had.  I

1    mean, it's not the facts of this case.

2        In this case, you're saying that their infringement

3    contentions are so flimsy that you ought to decide right now,

4    Judge, that they're a no go or probably; possibly.

5            MR. RIBERA:  Right.  It's only a possibility, your

6    Honor.  It's a pretty low threshold.

7            THE COURT:  That's not like you've got evidence that

8    they're a bunch of crooks.

9            MR. RIBERA:  That's true, your Honor.  We're not

10   saying they're all a bunch of crooks.  And the Court in *Gabriel*

11   *Technologies* mentioned that the test to satisfy the test -- the

12   reasonable possibility standard, defenders are not required to

13   show that there's no possibility that plaintiffs could win a

14   trial, but only that it's reasonably possible that the

15   defendants could win.  That's the standard.

16       In the facts of that case, it happened that it was much

17   more than a reasonable possibility.  And in fact, that Court

18   went on to say it's a strong likelihood that he would grant

19   fees under Section 285, but that's not required to meet the

20   test for Section 1030.

21           THE COURT:  Okay.  You make a pitch here that the

22   plaintiff is a -- what is that acronym that avoids saying

23   patent troll?  I can't --

24           MR. RIBERA:  Non-practicing entity --

25           THE COURT:  Yes, a non-practicing entity.

```
1              MR. RIBERA:  That's the language used by the White
2       House.
3              THE COURT:  Okay.  Then I want to use that language
4       if that's what they say.  You make the point that --
5              MR. RIBERA:  Patent assertion entity.  I'm sorry.
6       Patent assertion entity.
7              THE COURT:  Patent assertion entity.  Okay.  Entity.
8         You make that point and you also make a point; which
9       frankly, I have some sympathy for; that if you do win this
10      case, you may get an order awarding attorneys' fees that you
11      could never collect.  This is just a show.  It is doing nothing
12      but filing lawsuits; however the 576 patent.
13             MR. RIBERA:  That's right, your Honor.
14             THE COURT:  And I'm sympathetic with that, but I
15      don't know if that's a reason to impose a bond.  But not based
16      on Gabriel Technologies, for example.
17             MR. RIBERA:  Well, the facts in Gabriel Technologies
18      we admit were much more egregious than here.  But at least with
19      respect to cost, all we need to do is prevail on
20      non-infringement and we're entitled to cost.
21             THE COURT:  Yeah.  Well, that wouldn't be $749,000.
22             MR. RIBERA:  No.  I think cost we have something like
23      $80,000, $82,000.
24             THE COURT:  Yeah.
25             MR. RIBERA:  But then we still have under Section 285
```

1    a reasonable possibility of having this case declared

2    exceptional and getting awarded attorneys' fees.

3            THE COURT:  Isn't that standard of that exception --

4    actually, the word is extraordinary.  Isn't that extraordinary

5    standard pretty high?

6            MR. RIBERA:  The standard may be very high, your

7    Honor; but at this point, all you need to find is there's a

8    reasonable possibility of meeting it.

9        So you don't need to declare at this point that this case

10   is exceptional, but only that we can get to a point through

11   discovery --

12           THE COURT:  I understand that.  It's a fairly murky

13   pitch, you know.  I don't have to find it's extraordinary; and

14   how would I at this point?  I only have to find it's reasonably

15   possible that it might be extraordinary.

16           MR. RIBERA:  Correct, your Honor.

17       And if we end up at the end of the case in that situation

18   and your Honor grants attorneys' fees to us, we will have no

19   recourse.  IPVX probably would disappear.

20           THE COURT:  I'm sympathetic to that and I'm -- if

21   that's proposed legislation, which would be apparently Section

22   285(a) ever gets passed, I would look favorably upon it.

23   Applying it to a case that has the fact pattern that this one

24   presents itself, but it ain't passed yet.

25           MR. RIBERA:  That's correct, your Honor.

```
1              THE COURT:  Okay.

2              MR. RIBERA:  But the other point I wanted to make,

3    your Honor, is that plaintiffs have not made any allegations

4    that this would present a burden to them or prevent their

5    access to courts or anything like that.  So presumably, it's

6    not a problem for them to post the bond.

7              THE COURT:  Okay.  Mr. Yanney, do you have $749,000

8    or can you get a bond in that amount easily?

9              MR. YANNEY:  That I don't know the answer to, but I

10   assume it's pretty difficult.

11             THE COURT:  That's a very lawyer-like answer.

12       What does your client do?  IPVX Patent Holdings; what's its

13   line of work?

14             MR. YANNEY:  The line of work that I'm familiar with

15   is ownership of the U.S. Patent Rights in this 576 patent.  And

16   there is a couple of other related U.S. patents and it's the

17   assertion of those patents.

18             THE COURT:  Does it offer for sale any goods or

19   services?

20             MR. YANNEY:  I don't know of any.

21             THE COURT:  Was it created specifically to bring

22   lawsuits based upon infringement of the 576 patent and perhaps

23   some others as well?

24             MR. YANNEY:  I wasn't involved in the formation or

25   the creation.
```

1          THE COURT:  Okay.  That's a good answer.  That's a

2     good answer.

3          So does it -- to your knowledge, does it have anything --

4     any other business other than assertion of patent rights and

5     the 576 and perhaps some related ones?

6          MR. YANNEY:  Yeah, the only activity that I know of

7     information with IPVX are the ones that I'm involved with,

8     which is the assertion of the U.S. Patent Rights that were

9     previously developed and owned by Klausner Technology.

10          THE COURT:  Right.  And your client acquired those

11     rights 11 days or so before the patent expired?

12          MR. YANNEY:  I don't know the time -- no, I think it

13     was much earlier than that because the 11 days, I believe,

14     stems from a position that the defendants are taking that their

15     limited exposure to infringement liability is supposedly, I

16     believe, 11 days worth of damages because I think the complaint

17     is filed 11 days before the patent expiration.

18          But you know, our position is that under the patent

19     statute, we're entitled to pre-filing, pre-complaint damages as

20     to six years prior to the date of the complaint.

21          THE COURT:  I think the defendant represented to me

22     that this particular application that you are claiming

23     infringes was at the time in question actually offered to

24     people free?

25          MR. YANNEY:  That's correct, your Honor.

1      THE COURT:  So what would your damages be?

2      MR. YANNEY:  Well, I guess the damages under the

3    statute would be no less than a reasonable loyalty based on the

4    infringing use made by the defendant.  It doesn't look to

5    profitability or anything like that.

6      THE COURT:  The defendant grumbled to me in the

7    papers about being deluged with discovery that didn't seem to

8    be on target and the defendant argues was submitted merely to

9    make them jump through hoops and spend money.  It was a

10    reference to motion --

11      MR. RIBERA:  Pictures; correct, your Honor.

12      THE COURT:  -- picture films, was there not,

13    Mr. Ribera?  Why would you be asking them about motion picture,

14    Mr. Yanney?

15      MR. YANNEY:  Yeah, I don't know.  That other piece, I

16    don't recall, but we had -- we took the discovery request that

17    we had used in other cases and sort of recreating the wheel.

18    We've been using them in several of the different cases.

19      THE COURT:  Well, I'm in favor of not reinventing the

20    wheel if you don't have to, but you ought to at least make sure

21    the wheel fits the cart that you're now chasing.

22      MR. YANNEY:  Understood.

23      THE COURT:  And Mr. Ribera, if you find yourself

24    dealing with discovery that legitimately doesn't seem to be

25    focusing on issues that you should be responding to, you have

1    the right, under my standing order, to submit a discovery

2    dispute report.

3        And if I were to feel that -- or if I were to be convinced

4    that you were being showered with discovery that was intended

5    more to oppress you than to develop information that was useful

6    to the plaintiff's case, I would look kindly upon giving you

7    relief.

8            MR. RIBERA:  Thank you, your Honor.

9            THE COURT:  Well, Mr. Yanney, I've been talking

10   mostly to Mr. Ribera.  Is there anything you want to say?

11           MR. YANNEY:  Just a couple of points because your

12   Honor has touched on a fair amount of it.

13       The Federal -- of the California Code 1030, you know, our

14   position is that that, your Honor, should not be interpreted or

15   applied in a way that would be in conflict with the Federal

16   Patent Statute.

17       And sure enough, Section A (phonetic) says that, you know,

18   attorneys' fees means reasonable attorneys' fees that a party

19   may be authorized to recover by a statute apart from the

20   section.

21       So that brings in the Federal Patent Statute Section 285.

22   And the, you know, requirement of an exceptional case.  And the

23   only case on point that I guess either party has cited is this

24   *Gabriel* case; which actually, there's a fairly decent analysis

25   of the discussion of the Federal Patent Section 285 exceptional

1    case requirement.

2        And there, they said that -- excuse me.  I don't have it

3    here.  Yeah, after they talked about the, you know, fraud and

4    kind of the criminal issues involved with, you know, the

5    characters involved in that case, they said there's a strong

6    likelihood the defendants will ultimately prove this case as

7    exceptional.

8        So the Court did dig deep into the exceptional case

9    requirement, but also (inaudible) said that they're not

10   awarding attorneys' fees cases in patent cases is, quote, the

11   exception in patent cases not the rule, end quote.

12       So our contention is that even under the *Gabriel* case, this

13   would not dictate an award of the having to post a bond in a

14   patent case.

15       And then the other thing was if you look at the facts of

16   the *Gabriel* case closely, what they were seeking was a known

17   valid first to post a bond in the amount of a million dollars

18   for attorneys' fees that were already incurred.  These were not

19   kind of speculative forward looking attorneys' fees, you know;

20   kind of like the situation we have here; and just to kind of

21   confirm the kind of speculative nature of this.

22       Now, we found out for the first time in the defendant's

23   reply that, you know, the chart that they had given us to, you

24   know, likely attorneys' fees and might expend in the future

25   included two summary judgment motions that they think they

1      might file and also two summary judgment motions they think

2      that IPVX might file.

3          I can, you know, represent to the Court with utmost

4      certainly IPVX doesn't really plan to file any summary judgment

5      motions.

6          So here, again, unlike *Gabriel* where it was actually money

7      already incurred; here, we have those kind of speculative, you

8      know, not quite sure what the amount is going to be scenario.

9              THE COURT:  Well, I'm not at this point diving into

10     what the amount might be.  I'm trying to get over the hurdle of

11     whether I should impose any amount at all.

12         If I were, I would take the defendant's representation as

13     to the hours they expect to pay going forward with a grain of

14     salt so you don't need to say anything more about that.

15     Anything else?

16             MR. RIBERA:  Your Honor --

17             MR. YANNEY:  I'm -- first, again, in the *Gabriel*

18     case; the facts, again, which was the only patent case we could

19     find or that the defendants could find, I believe -- yeah, find

20     Section 1030.  You know, there, the plaintiff was not in

21     business anymore.  Here, that's not a situation that we have.

22         In addition, the *Gabriel* case was about correction of

23     inventorship.  And in terms of looking at the possibility of

24     suffice (phonetic) factor, the Court there noted that under the

25     presumption of afforded issue patents, the lead inventorship

1  was presumed legally to be correct and the plaintiff had not

2  submitted any evidence to oppose that.

3      So the Court views that in its analysis of determining is

4  there possibility of success on the merits.  And, you know,

5  it -- based upon the legal presumption, which the plaintiffs

6  have to rebut by clear and convincing evidence that they failed

7  to provide any evidence.

8      So again, you head it all up and the one case that we have

9  is really looking at a completely different set of

10 circumstances; different actors involved; and you can't just

11 apply it to the situation that we have here.

12          THE COURT:  Okay.  You get the last word, Mr. Ribera.

13          MR. RIBERA:  Just real quick, your Honor.

14     We're clearly appealing to the Court's discretion here.  I

15 think *Gabriel Technologies* provides the legal grounds for the

16 Court to apply Section 1030 in a patent case for fees.

17     But even without that; clearly, the cost would be covered

18 because we have more than a reasonable possibility of

19 prevailing on non-infringement and that would be automatically

20 cost would be granted.

21     And definitely, this is a novel theory; it's not being

22 applied in many cases; and we are appealing to the Court's

23 sense of fairness.  No one knows much about the plaintiff; not

24 even their counsel can tell us what it is that they really do.

25 They may disappear in a split second.  We just don't know.

```
1              THE COURT:  Here today, gone tomorrow.

2              MR. RIBERA:  Exactly.  And we just ask that they put

3      their money where their mouth.  So if they really think this is

4      a serious case -- and most -- worst case scenario, they get one

5      year of damages because we launch our App one year -- less than

6      a year before they filed the lawsuit.  There's no damages in

7      this case.

8              THE COURT:  So going back six years isn't going to do

9      them any good?

10             MR. RIBERA:  Exactly.  There's not six years to go

11     back to.  There's just no damages in this case.  And the more

12     likely scenario in cases that they prevail, which is highly

13     unlikely, is that they get 11 days worth of damages.  The

14     patent expired -- by the time the plaintiff was formed, the

15     patent had already expired.  So this is just a highly unusual

16     situation and we hope that your Honor grants the bond.

17             THE COURT:  Okay.  The matter is submitted.  Thank

18     you, counsel.

19             MR. RIBERA:  Thank you, your Honor.

20             THE COURT:  You're welcome.

21             MR. YANNEY:  Thank you.

                   (Proceedings concluded at 11:06 a.m.)
```

## CERTIFICATE OF REPORTER

     I certify that the foregoing is a true and correct transcript, to the best of my ability, of the pages of the official electronic sound recording provided to me by the U.S. District Court, Northern District of California, of the proceedings taken on the date and time previously stated in the above matter.

     I further certify that I am neither counsel for, related to, nor employed by any of the parties to the action in which this hearing was taken; and, further, that I am not financially nor otherwise interested in the outcome of the action.

_____ DATE 3-30-14

       Carrie McKee-Parks         Date
      McKee-Parks65@att.net
        510-637-9897