1

2

3

4

5

6

7

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| IPVX PATENT HOLDINGS, INC.,<br><br>            Plaintiff,<br><br>      v.<br><br>VOXERNET LLC.,<br><br>            Defendant. | Case No.  5:13-cv-01708 HRL<br><br>**ORDER CONSTRUING DISPUTED CLAIM TERMS OF U.S. PATENT NO. 5,572,576**<br><br>[Re:   Dkt. No. 91] |

Plaintiff IPVX Patent Holdings, Inc. ("IPVX") accuses defendant Voxernet LLC ("Voxernet") of infringing claims 3, 4, 18, and 19 of U.S. Patent No. 5,572,576 ("'576 Patent"). On June 20, 2014, the court held a tutorial, and then on July 3, 2014 a claim construction hearing for the purpose of construing the meaning of certain terms of the '576 Patent.[1]

---

[1] The court also heard defendant's motion for summary judgment of noninfringement.

United States District Court
Northern District of California

## I.  BACKGROUND

### A.  The '576 Patent

The '576 Patent "relates to a telephone answering device [TAD] that displays information about messages recorded within the device and provides selective access to those messages based on the displayed information." '576 col.1 ll.16-20. Figure 1 shows one embodiment of the invention, and depicts a "telephone answering device" which lists (via "display/touch screen" **32**) voice messages received by the caller's name ("identity" **40**) and phone number (**42**), allowing a user to both see all of her received messages and select messages to listen to in any order using keys (**34d, 34e**) on the touch screen. *See* '576 col.4 ll.27-37.



'576 Fig. 1 (excerpt).

The majority of the '576 Patent's specification discusses the computer program steps that the TAD follows to (1) answer an incoming call, (2) receive the caller's identity, (3) record a

2

message from the caller, (4) associate the message with the caller's identity, and (5) display and selectively playback the message. *See, e.g., id.* Fig. 11.

The '576 Patent also discloses a "remote access device" ("RAD") which allows a user to check her messages remotely. *See id.* Figs. 13, 15. The RAD may be a cellphone, Fig. 18, or a handheld electronic device, Fig. 12.

IPVX asserts infringement of claims 3, 4, 18, and 19. Claims 3 and 4 cover the use of the remote access device:

> 3. A method of automatically answering incoming telephone calls and storing and retrieving information from the incoming telephone calls with a telephone answering device having a memory and being coupled to a telephone, comprising the steps of:
>
>> receiving first signals specifying each caller of each incoming call;
>>
>> receiving a voice message from each caller and storing each said received voice message as a stored voice message in said memory;
>>
>> linking each of said received first signals with a corresponding voice message;
>>
>> transmitting said received first signals to a user remote access device such that said first signals are available upon user demand for assisting in the selective retrieval of at least one of said stored voice messages using displayed first signals; and
>>
>> transmitting to a user remote access device at least one specific voice message linked to a specific one of said received first signals in response to selection of said at least one of said stored voice messages.
>
> 4. The method of automatically answering incoming telephone calls according to claim 3, said method further using a user remote access device and comprising the steps of:
>
>> receiving at said user remote access device said first signals specifying the caller of each incoming call, said first signals being transmitted from said telephone answering device to said user remote access device;
>>
>> displaying at said user remote access device caller identities related to said first signals, said caller identities being associated with said stored voice messages for user selection of at least one of said caller identities; and

United States District Court
Northern District of California

controlling said telephone answering device by transmitting a second signal from said user remote access device to said telephone answering device to cause said telephone answering device to play back a selected stored voice message in response to the selection of a specific caller identity from among the displayed caller identities.

Claims 18 and 19 do not require a remote access device:

18. A method of automatically answering incoming telephone calls and storing and retrieving information from the incoming telephone calls with a telephone answering device, said telephone answering device having a memory and being coupled to a telephone, said method comprising the steps of:

storing a predetermined list of names and associated stored identifying information in said memory;

receiving identifying information specifying a particular one of a plurality of callers for each incoming call;

receiving a voice message from at least one of said plurality of callers and storing said voice message in said memory;

comparing said received identifying information with said predetermined list and displaying the caller's name if the received identifying information matches any stored identifying information identical in said predetermined list;

displaying simultaneously a plurality of callers' names whose respective received identifying information matches stored identifying information in said list;

linking each displayed caller's name with its corresponding voice message; and

selectively directly retrieving the voice message corresponding to any one of the displayed caller's names by selecting that caller's name without scrolling through either said displayed names or said voice messages.

19. The method according to claim 18, further comprising the step of simultaneously displaying the corresponding caller's name and stored identifying information when the voice message associated with the selected caller's name is audibly retrieved.

## B.  Prior Litigation Involving the '576 Patent

IPVX, or its predecessor Klausner Technologies, has asserted the '576 Patent against other defendants. In *Klausner Technologies, Inc. v. Alcatel-Lucent USA, Inc. et al.*, Case No. 6:11-CV-231, 2013 WL 2242453 (E.D. Tex. May 20, 2013) ("*Alcatel*"), the court construed six terms of the

4

'576 Patent. The case ended in settlement following claim construction. In *Klausner Technologies, Inc. v. Vonage Holdings Corp.*, Case No. 2:06-CV-275, 2007 WL 2300789 (E.D. Tex. Aug. 7, 2006) ("*Vonage*"), the court construed eight terms in the '576 Patent. That case also ended in settlement following claim construction.

## II. LEGAL STANDARD

Claim construction is exclusively within the province of the court. *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 387 (1996); *Lighting Ballast Control LLC v. Philips Elecs. N.A. Corp.*, 744 F.3d 1272, 76-77 (Fed. Cir. 2014) (en banc). "It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'" *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (internal citation omitted). Claim terms "are generally given their ordinary and customary meaning," defined as "the meaning . . . the term would have to a person of ordinary skill in the art in question . . . as of the effective filing date of the patent application." *Id.* at 1312-13 (internal citation omitted). The skilled artisan reads the claim term "in the context of the entire patent . . . including the specification." *Id.*, s*ee also Multiform Desiccants, Inc. v. Medzam, Ltd.*, 133 F.3d 1473, 1477 (Fed. Cir. 1998). In determining the meaning of a disputed claim limitation, the intrinsic evidence, including the claim language, written description, and prosecution history, is the most significant. *Phillips*, 415 F.3d at 1315-17. The court reads claims in light of the specification, which is "the single best guide to the meaning of a disputed term." *Id.* at 1315. Furthermore, "the interpretation to be given a term can only be determined and confirmed with a full understanding of what the inventors actually invented and intended to envelop with the claim." *Id.* at 1316 (quoting *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1250 (Fed. Cir. 1998)). The words of the claims must be understood as the inventor used them as revealed by the patent and prosecution history. *Id.*

Although extrinsic evidence is less significant than the intrinsic record, the court may also reference extrinsic evidence to "shed useful light on the relevant art." *Id.* at 1317 (quoting *C.R. Bard, Inc. v. U.S. Surgical Corp.*, 388 F.3d 858, 862 (Fed. Cir. 2004)). "[T]echnical dictionaries

5

may provide [help] to a court 'to better understand the underlying technology' and the way in which one of skill in the art might use the claim terms. . . .  Such evidence . . . may be considered if the court deems it helpful in determining 'the true meaning of language used in the patent claims.'" *Id.* at 1318 (internal citations omitted).

## III. CLAIM CONSTRUCTION

The parties Joint Claim Construction and Prehearing Statement, Dkt. No. 76, identified 18 terms for construction and listed the ten most significant terms for resolution of the case. Voxernet identified terms 1-6 as potentially case dispositive. *Id.* The court construes the ten most significant terms, plus the term "first signals."

### 1.   "Telephone"

| IPVX's Proposed Construction | Voxernet's Proposed Construction | Court's Construction |
|---|---|---|
| No construction necessary | A device for communicating by voice with another person over distances by dialing a telephone number to establish a two-way connection | Plain and ordinary meaning |

The term "telephone" appears in the preamble of claim 3:

> 3. A method of automatically answering incoming telephone calls and storing and retrieving information from the incoming telephone calls with a telephone answering device having a memory and being coupled to a **telephone**, comprising the steps of . . .

"Telephone" also appears in the preamble of claim 18:

> 18. A method of automatically answering incoming telephone calls and storing and retrieving information from the incoming telephone calls with a telephone answering device, said telephone answering device having a memory and being coupled to a **telephone**, said method comprising the steps of . . .

IPVX argues that no construction is necessary because "telephone" "is a common word that would be understood by a jury . . . and its meaning is apparent from the ordinary meaning of the claim language itself." Dkt. No. 91, IPVX Br. at 12. IPVX points to the *Markman* orders in the *Vonage* and *Alcatel* matters. The prior orders used the term "telephone" in numerous constructions without separately defining the term. *Id.* IPVX argues that the court's silence on "telephone"

6

1    means it gave the term its plain and ordinary meaning.[2]

2         IPVX does not specify what the plain and ordinary meaning of "telephone" would cover,

3    but suggests that it would include "the early Bell telephones," "the electromagnetic telephone

4    invented by Philip Reiss," and "pure VoIP [Voice-over IP or Internet] telephones," Dkt. No. 104,

5    IPVX Reply at 2, but would not include a microphone, *id.* at 7.  IPVX's summary judgment

6    briefing even goes so far as to call out tin-can telephones as within the plain and ordinary meaning

7    of telephones. Dkt. No. 99-6 (Opp. to MSJ) at 9. IPVX does admit that a telephone should "make

8    a call and transmit a voice message that can then be selectively retrieved according to the claimed

9    method." *Id.* IPVX emphasizes that the '576 specification, which calls out a "standard telephone,"

10   only discloses "exemplary embodiments" and that it would be error to import limitations from the

11   specification examples into the claims.

12        IPVX's position on claim construction appears to be that the court can only adopt (1) the

13   language of the claims themselves or (2) an express definition from the specification. That is

14   simply not the law. Instead, "[w]ords of a claim are generally given their ordinary and customary

15   meaning, which is the meaning a term would have to a person of ordinary skill in the art *after*

16   *reviewing the intrinsic record at the time of the invention*." *Phillips v. AWH Corp.,* 415 F.3d 1303,

17   1312-13 (Fed. Cir. 2005) (en banc) (emphasis added). IPVX's position that one of ordinary skill,

18   after reviewing the '576 Patent, would understand it to cover tin-can phones is absurd. The court

19   will not give the term "telephone" the meaning of "telephone, as that term has ever, at any time,

20   been used to describe a communications device," as IPVX's briefing suggests.

21        In response to IPVX's non-construction argument, Voxernet seeks to limit the term

22   "telephone" by requiring (1) dialing telephone numbers and (2) establishing a two-way

23   connection. Dkt. No. 97, Voxernet Opp. at 8.Voxernet points to the examples of telephones

24   included in the specification, which all show a "standard telephone" with numeric keypads. *See*

25

26

27   [2] The parties in the prior litigation did not request construction of the term "telephone." It also
     appears from the Markman orders that the parties did not even dispute what constituted a
     "telephone."

28                                                    7

'576 Patent Fig. 1; col.3 l.66-col.4 l.12 (describing the example "standard telephone"). The '576

Patent also gives several examples of how a telephone call is made by dialing a telephone number.

*See, e.g.,* Fig 11 570, 580 ("User may select any of displayed caller's numbers to be dialed

automatically" and the "TAD dials & connects to selected number"); col.10 ll.17-24 (explaining

that a user can return a call by dialing a phone number); col.10 ll.52-57 (explaining that a user can

dial the telephone number of the TAD to access their messages from a RAD). Voxernet correctly

points out that the specification does not disclose any other methods of calling someone on a

telephone.[3]

Voxernet also cites to a dictionary definition of "telephone" from around the time of the

'576 Patent. The *New Shorter Oxford English Dictionary* defines "telephone" as:

> 1. An apparatus for transmitting speech or sound (or electronic information) in the form of an electrical signal passed along a wire or line between two instruments, as used in communication systems; an instrument forming part of this, now [usually] a single unit consisting of or including a handset with a transmitting microphone, a receiving diaphragm, and a numbered dial or set of buttons by which connection can be made to another such instrument. . . .

Dkt. No. 98-3 (Ching Decl. ¶ 4, Ex. C, *The New Shorter Oxford English Dictionary* 3239 (1993).)

This definition is not helpful because it appears to exclude wireless telephones, which clearly are

within the scope of the '576 Patent, *see* Fig. 15 (depicting a cell phone) and col.12 ll.36-64

(explaining how a cell phone could be used as a RAD), and does not support either Voxernet's

telephone number or two-way communication requirement.

At the technology tutorial, Voxernet conceded that it is "not wed to the particular language

of any of those constructions," but believes "there is a very clear common sense difference

between a telephone as used in this patent at the time of the invention in 1992 and [the Voxernet]

system." Dkt. No. 124 (Trans.) at 48:2-6.

In the end, the parties both appear to concede that "telephone" should be given its plain

---

[3] IPVX argues that specification discloses other identifiers to select a caller, but these portions of the specification are directed at different examples of first signals, not different ways to place a telephone call. *See* IPVX Reply at 4.

and ordinary meaning, as "telephone" was used in 1992. Voxernet's limitations—telephone numbers and two-way communication—are appealing because they conjure an image of a telephone in the most typical sense. However, the '576 Patent does not disclose any special aspects of a telephone system, or expressly disclaim any common types of telephones. Nonetheless, the '576 Patent clearly only contemplates "standard" telephones, and not tin-can telephones, etc. (Of course, there is no suggestion that one of ordinary skill in the art would consider a tin-can telephone to be within the plain and ordinary meaining of telephone in 1992.)

The court therefore gives "telephone" its plain and ordinary meaning.

### 2.   "Telephone answering device"

| IPVX's Proposed Construction | Voxernet's Proposed Construction | Court's Construction |
|---|---|---|
| An electronic device for answering an incoming telephone call | An electronic device for answering telephone calls made to the telephone number for the telephone to which the device is coupled | An electronic device for answering an incoming telephone call made to the telephone to which the device is coupled |

The term "telephone answering device" appears in the preamble of claims 3 and 18 and in the body of claim 4. Claim 3 is exemplary:

> 3. A method of automatically answering incoming telephone calls and storing and retrieving information from the incoming telephone calls with a **telephone answering device** having a memory and being coupled to a telephone, comprising the steps of . . .

As just discussed, the court declines to use Voxernet's telephone number or two-way communication limitations. IPVX bases its construction on the *Vonage* and *Alcatel* Markman Orders, and IPVX's briefing only addresses the telephone number limitation.

The *Vonage* court first adopted the construction "an electronic device for answering an incoming telephone call." *Vonage* at 10. In *Alcatel*, the defendants proposed "a telephone answering machine, not including a computer-based voice messaging system which utilizes a central computer." *Alcatel* at 4-5. The *Alcatel* court rejected this construction and maintained the prior construction from *Vonage*.

The prior orders are not particularly helpful in resolving the current dispute, because Voxernet's construction, minus the telephone number, simply requires that the TAD be associated

United States District Court
Northern District of California

with the called telephone. This is fully supported by the specification, which provides no hint that the TAD could be separate from the telephone or answer calls made to more than one telephone. *See, e.g.,* '576 at col.10 ll.53-61 (explaining that a user dials her own telephone number to access the TAD); *see also Vonage* at 10 (explaining that the TAD is connected to the telephone receiving the incoming call, although not necessarily connected to the same "telephone line," which is required by the preamble of claim 1). Indeed, the claim language itself requires that the TAD be "coupled" to a telephone. The court finds that Voxernet's construction is helpful in ensuring that the called telephone is the telephone coupled to the TAD. Therefore, the court removes the telephone number limitation and adopts the construction of: "an electronic device for answering an incoming telephone call made to the telephone to which the device is coupled."

### 3. "Coupled to a telephone"

| IPVX's Proposed Construction | Voxernet's Proposed Construction | Court's Construction |
|---|---|---|
| Connected to a telephone receiving an incoming call | Connected to the same telephone line as the telephone receiving calls made to the telephone number associated with the telephone so that the telephone and the device can answer the calls | Connected to the telephone receiving the incoming call |

The term "coupled to a telephone" appears in the preambles of claims 3 and 18. Claim 3 is exemplary:

> 3. A method of automatically answering incoming telephone calls and storing and retrieving information from the incoming telephone calls with a telephone answering device having a memory and being **coupled to a telephone**, comprising the steps of . . .

Here, the court finds Voxernet's construction unhelpful because it includes telephone numbers. However, IPVX's construction does not clarify that the called telephone is coupled to the TAD. Therefore, the court modifies IPVX's construction to: "connected to the telephone receiving the incoming call."

United States District Court
Northern District of California

### 4. "Automatically answering incoming telephone calls"

| IPVX's Proposed Construction | Voxernet's Proposed Construction | Court's Construction |
|---|---|---|
| No construction necessary | Automatically answering calls made to the telephone number associated with the telephone answering device | Automatically answering calls made to the telephone associated with the telephone answering device |

The term "automatically answering incoming telephone calls" appears in the preambles of claims 3, 4 and 18. Claim 3 is exemplary:

> 3. A method of **automatically answering incoming telephone calls** and storing and retrieving information from the incoming telephone calls with a telephone answering device having a memory and being coupled to a telephone, comprising the steps of . . .

As previously discussed, the '576 Patent does not require that telephone calls be made to a telephone number. Without that limitation, Voxernet's construction again specifies that the called telephone is associated with the TAD.

IPVX relies on the *Vonage* order. The *Vonage* court concluded that no construction was necessary. *Vonage* at 9. The defendants argued that "automatically answering" should be construed as "sensing an incoming ring signal on the called party's telephone line and putting the called party's telephone line in an off-hook state," relying on Figures 3A and 3B of the '576 Patent. *Id.* at 4. As the *Vonage* court noted, Figures 3A and 3B were simply exemplary embodiments and did not limit claim 3 to any specific method of answering incoming calls. Nonetheless, the *Vonage* order also stated that the "the patent specification simply describes the [TAD] as being connected to the telephone line that receives an incoming call." *Id.* at 10. Accordingly, the court modifies Voxernet's construction to: "automatically answering calls made to the telephone associated with the telephone answering device."

11

**5.  "Each incoming call"**

| IPVX's Proposed Construction | Voxernet's Proposed Construction | Court's Construction |
|---|---|---|
| No construction necessary | Each telephone call made to the telephone number associated with the telephone that is answered by the telephone answering device | No construction necessary |

The phrase "each incoming call" appears in the body of claims 3, 4, and 18. Claim 3 is exemplary:

> 3. A method of automatically answering incoming telephone calls . . . comprising the steps of:
> receiving at said user remote access device said first signals specifying the caller of **each incoming call**. . .

The court agrees with IPVX that no construction of this term is necessary. Voxernet's construction again requires telephone numbers and the requirement that the TAD be connected to the called telephone. Because the term "each incoming call" has its antecedent basis in the preamble term "automatically answering **incoming telephone calls**," which the court has already construed as requiring the TAD-telephone connection, repeating that requirement here is not helpful in construing the simple term at issue. Accordingly, the court finds construction unnecessary.

**6.  "Corresponding voice message"**

| IPVX's Proposed Construction | Voxernet's Proposed Construction | Court's Construction |
|---|---|---|
| The voice message received by the telephone answering device with the first signal | The voice message stored in the memory of the telephone answering device that the device received from a caller when answering a telephone call made to the telephone number of the telephone | The voice message received by the telephone answering device with the first signal |

The phrase "corresponding voice message" appears in the body of claims 3 and 18. Claim 3 is exemplary:

> 3. A method of automatically answering incoming telephone calls . . . comprising the steps of:
> . . .
> linking each of said received first signals with a **corresponding voice message**; . . .

United States District Court
Northern District of California

1   IPVX's construction is again based on the *Alcatel* and *Vonage* orders, and Voxernet's

2   construction again includes the telephone number requirement. IPVX argues that its construction

3   resolves any ambiguity in the claim term. The court agrees. Read with the "linking" step, IPVX's

4   construction requires "linking each of said received first signals with [the voice message received

5   by the telephone answering device with the first signal]." *See also Vonage* at 11-12 (adopting

6   same construction).

7   Voxernet's construction seeks to duplicate its constructions of "telephone answering

8   device" and "automatically answering . . . " and also move the memory limitation of the preamble

9   in to the "voice message" term. The court finds this duplication unhelpful and unnecessary.

10  Accordingly, the court construes "corresponding voice message" as: "the voice message

11  received by the telephone answering device with the first signal."

### 7.   "User remote access device"

| IPVX's Proposed Construction | Voxernet's Proposed Construction | Court's Construction |
|---|---|---|
| A device that can gain access to voice messages stored on the telephone answering device from a remote location | A device that can gain access from a remote location over a telephone line to voice messages stored on the memory of the telephone answering device | A device that can gain access to voice messages stored on the telephone answering device from a remote location |

18  The phrase "user remote access device" appears in the body of claims 3 and 4. Claim 3

19  requires "transmitting said received first signals to a user remote access device" and "transmitting

20  to a user remote access device at least one specific voice message." Claim 4 further describes the

21  use of the user remote access device.

22  IPVX relies on the *Markman* orders in *Vonage* and *Alcatel* while Voxernet adds that the

23  voice messages are stored in the TAD memory and are accessed over a telephone line. The court

24  agrees that the voice messages must be stored in the TAD memory, as specified in a separate

25  limitation in claim 3 ("receiving a voice message from each caller and storing each said received

26  voice message as a stored voice message in said memory," with the preamble clarifiying that the

27  TAD has an associated memory), but does not agree that the RAD and TAD must communicate

28

over a telephone line.

Voxernet points to the prosecution history of a parent application to the '576 Patent. During prosecution, the Examiner rejected the pending claims as being indefinite because "it is unclear whether the step of leaving message on the telephone answering machine and the step of retrieving messages by using a remote access device in completed in one or two calls." Dkt. No. 99-4 at 28. The applicants responded by noting that the "the step of leaving messages on the telephone answering machine and the step of retrieving messages by using the remote access device are independent and accomplished in two separate calls." *Id.* Thus, Voxernet concludes that the "accessing" or "retrieving" step must be a call made over a telephone line. Voxernet Opp. at 20. Voxernet also points to the examples of accessing the TAD disclosed in the specification, which involve calling the TAD and establishing a call connection to the RAD. *See* '576 at col.10 ll.53-55; col.10 l.61-col.11. l.6; col.12 ll.25-27; col.12 ll.49-50.

In response, IPVX also cites to the prosecution history of '576 parent application, where applicants responded to the Examiner question over "when and how signals are transmitted between the [TAD] and the [RAD]." Dkt. No. 94-8 at 11. The applicants responded that "the signals can be  transmitted through any medium, including, but not limited to, DTMF (dual tone-multi frequency)  tones over a telephone line, radio waves, etc." The *Vonage* court cited this and other portions of the prosecution history when discussing whether the RAD uses data or voice channels to communicate with the TAD. *Vonage* at 15.

IPVX also cites to an amendment where the applicants specified that the TAD is connected to the telephone line, rather than the RAD. IPVX Reply at 11. The court does not find this amendment illuminating because it does not discuss how the RAD and TAD communicate, only that the TAD is connected to the line receiving the incoming calls. Dkt. No. 98-4 at 27-28.

Because Voxernet's construction does not add any helpful clarification to the term "user remote access device," and imports limitations not supported by the claims, the court adopts IPVX's construction. *See also Vonage* at 12-16; *Alcatel* at 9-10.

United States District Court
Northern District of California

14

**8.  "Transmitting said received first signals to a user remote access device"**

| IPVX's Proposed Construction | Voxernet's Proposed Construction | Court's Construction |
|---|---|---|
| No construction is necessary other than the construction of "first signals" and "user remote access device" | Sending the signals received from the caller from the telephone answering device to the user remote access device through a telephone line | No construction is necessary other than the construction of "first signals" and "user remote access device" |

The phrase "transmitting said received first signals to a user remote access device" appears in claim 3:

> 3. A method of automatically answering incoming telephone calls . . . comprising the steps of:
> . . .
> **transmitting said received first signals to a user remote access device**; . . .

As discussed above, the court does not agree with Voxernet that the TAD and RAD must communicate via a telephone line. The additional limitations in Voxernet's construction are clear from the remainder of the claim, which already requires that the first signals are received from the caller and stored in the TAD. Accordingly, the court adopts IPVX's position that no construction is necessary, other than the construction of "first signals" and "user remote access device."

**9.  "Transmitting to a user remote access device at least one specific voice message . . . in response to selection of at least one of said stored voice messages"**

| IPVX's Proposed Construction | Voxernet's Proposed Construction | Court's Construction |
|---|---|---|
| No construction is necessary other than the construction of "first signals" and "user remote access device" indicated above | Sending to a user remote access device a voice message selected by the user after the user selects the voice message on the user remote access device | Transmitting to a user remote access device a voice message selected by the user after the user selects the voice message on the user remote access device |

The phrase "transmitting to a user remote access device at least one specific voice message . . . in response to selection of at least one of said stored voice messages" appears in claim 3:

> 3. A method of automatically answering incoming telephone calls . . . comprising the steps of:
> . . .
> **transmitting to a user remote access device at least one specific voice message linked to a specific one of said received first signals in response to selection of said at least**

1

**one of said stored voice messages**.

2          IPVX raises four issues with Voxernet's construction: (1) whether "transmitting" means

3    "sending"; (2) whether "at least one specific voice message" should be "a voice message"; (3)

4    whether "in response to" means "after"; and (4) whether "the user" must select the voice message.

5    IPVX argues that the claim terms are clear to a jury and that no rewording of the claim language is

6    warranted. Generally, the court agrees that "transmitting" and "sending" mean the same thing and

7    are equally clear to a jury. The court also agrees that "at least one specific voice message" and "a

8    voice message" mean the same thing, but "a voice message" is clearer to a jury.

9          IPVX's remaining arguments are more substantive. The court agrees that "in response to"

10   does not necessarily mean "after," but finds that "after" is the appropriate construction. The '576

11   Patent is clear that the user selects the voicemail to be played, and the RAD or TAD then plays the

12   voicemail. *See, e.g.,* '576 Abstract (the invention "enables the user to access messages in a

13   selective manner."). IPVX argues that "transmission and selection [may] occur concurrently."

14   Reply at 12. This possibility is not disclosed or suggested by the '576 Patent, and IPVX cites no

15   support for this possibility.

16         The court also agrees with Voxernet that the user must select the message to be

17   transmitted. The '576 Patent is clear that the user of the RAD selects the message to be played

18   back over the RAD. *See, e.g.,* '576 at col.11 ll.24-31 ("the user may now select the message or

19   messages that he wants to hear . . ."; col.2 ll.50-55 ("It is a further object of the invention to

20   provide a TAD that displays a list of all caller's identities and that displays such list so that the user

21   may selectively access the voice message associated with a given caller without having to listen to

22   all preceding voice messages."). The '576 Patent does not provide any support for someone other

23   than the user to select the voice message, or for the voice message to be sent automatically to the

24   RAD.

25         Accordingly, the court adopts Voxernet's construction of: "transmitting to a user remote

26   access device a voice message selected by the user after the user selects the voice message on the

27   user remote access device."

28

United States District Court
Northern District of California

16

### 10. "To cause said telephone answering device to play back"

| IPVX's Proposed Construction | Voxernet's Proposed Construction | Court's Construction |
|---|---|---|
| No construction necessary | To cause said telephone answering device to play back a stored voice message over a telephone line | No construction necessary |

The phrase "to cause said telephone answering device to play back" appears in claim 4:

> 4. A method of automatically answering incoming telephone calls according to claim 3 . . . comprising the steps of:
> . . .
> controlling said telephone answering device by transmitting a second signal from said user remote access device to said telephone answering device **to cause said telephone answering device to play back** a selected stored voice message in response to the selection of a specific caller identity from among the displayed caller identities.

As discussed above, the court does not agree with Voxernet that the TAD and RAD must communicate via a telephone line. The court agrees with IPVX that no construction is necessary.

### 11. "First signals"

| IPVX's Proposed Construction | Voxernet's Proposed Construction | Court's Construction |
|---|---|---|
| Information | Signals transmitted by the calling telephone during a telephone call unique to the caller | Information |

The phrase "first signals" appears in claims 3 and 4, for example:

> 3. A method of automatically answering incoming telephone calls . . . comprising the steps of:
> Receiving . . . **first signals** specifying each caller of each incoming call . . .

The '576 Patent explains that the "first signals" are used to identify the caller and associate the voice message with the caller's identity. The specification lists several possible "signals": DTMF signals representing the caller's telephone number, personal IDs, home telephone numbers. More broadly, the patent explains that "[i]t is to be understood that any incoming signals over the telephone line with a voice message that is recognizable by the TAD and is generally unique to the caller may be used instead of DTMF tones." '576 col.9 ll.51-55.

IPVX argues, based on the claim construction orders in *Alcatel* and *Vonage*, the first signals are simply "information." IPVX Br. at 3. Voxernet does not address this term in its

17

briefing because it was not one of the ten most significant terms.

As noted by the Eastern District of Texas, claim 3 explains that the first signal "specif[ies] each caller of each incoming call." *Vonage* at 11. Additionally, the '576 Patent only describes the "first signals" as a DTMF signal or anything else "generally unique to the caller." The court agrees with IPVX that "first signals," when read in the context of the claims, are properly construed as "information [specifying each caller of each incoming call]." Therefore, the court adopts IPVX's construction of "information."

United States District Court
Northern District of California

18

**IV. ORDER**

For the reasons set forth above, the court construes the claims as follows:

| Claim Term | Construction |
|---|---|
| Telephone | Plain and ordinary meaning |
| Telephone answering device | An electronic device for answering an incoming telephone call made to the telephone to which the device is coupled |
| Coupled to a telephone | Connected to the telephone receiving the incoming call |
| Automatically answering incoming telephone calls | Automatically answering calls made to the telephone associated with the telephone answering device |
| Each incoming call | No construction necessary |
| Corresponding voice message | The voice message received by the telephone answering device with the first signal |
| User remote access device | A device that can gain access to voice messages stored on the telephone answering device from a remote location |
| Transmitting said received first signals to a user remote access device | No construction is necessary other than the construction of "first signals" and "user remote access device" |
| Transmitting to a user remote access device at least one specific voice message . . . in response to selection of at least one of said stored voice messages | Transmitting to a user remote access device a voice message selected by the user after the user selects the voice message on the user remote access device |
| To cause said telephone answering device to play back | No construction necessary |
| First signals | Information |

**SO ORDERED**.

Dated:   July 3, 2014

_____
HOWARD R. LLOYD
UNITED STATES MAGISTRATE JUDGE

United States District Court
Northern District of California

19