UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| IPVX PATENT HOLDINGS, INC., <br> Plaintiff, <br> v. <br> VOXERNET LLC., <br> Defendant. | Case No.  5:13-cv-01708 HRL <br><br> **ORDER (1) DENYING PLAINTIFF'S MOTION TO VACATE JUDGMENT AND (2) GRANTING IN PART DEFENDANT'S MOTION FOR ATTORNEY'S FEES** <br><br> [Re:  Dkt. Nos. 138, 145] |

In this patent infringement case, after the court ruled on claim construction and then found noninfringement, judgment was entered for defendant Voxernet LLC ("Voxernet"). *See* Dkt. Nos. 131 (Order Construing Claim Terms), 132 (Order on Summary Judgment), 134 (Judgment). Now, Voxernet moves for attorney's fees, Dkt. No. 138, and plaintiff IPVX Patent Holdings, Inc. ("IPVX"), moves under Federal Rules of Civil Procedure 59(e) and 60(b) for relief from the judgment, Dkt. No. 145. This order addresses both motions.

**I.  BACKGROUND**

    **A.  U.S. Patent No. 5,572,576**

U.S. Patent No. 5,572,576 ("'576 Patent") "relates to a telephone answering device [TAD] that displays information about messages recorded within the device and provides selective access to those messages based on the displayed information." '576 col.1 ll.16-20. Figure 1 shows one embodiment of the invention, and depicts a "telephone answering device" which lists (via

1   "display/touch screen" **32**) voice messages received by the caller's name ("identity" **40**) and phone
2   number (**42**), allowing a user to both see all of her received messages and select messages to listen
3   to in any order using keys (**34d, 34e**) on the touch screen. *See* '576 col.4 ll.27-37.



'576 Fig. 1 (excerpt).

The majority of the '576 Patent's specification discusses the computer program steps that the TAD follows to (1) answer an incoming call, (2) receive the caller's identity, (3) record a message from the caller, (4) associate the message with the caller's identity, and (5) display and selectively playback the message. *See, e.g., id.* Fig. 11.

The '576 Patent also discloses a "remote access device" ("RAD") which allows a user to check her messages remotely. *See id.* Figs. 13, 15. The RAD may be a cellphone, Fig. 18, or a handheld electronic device, Fig. 12.

IPVX asserted infringement of claims 3, 4, 18, and 19. Claims 3 and 4 cover the use of the

remote access device; claims 18 and 19 do not require a remote access device.

### B. Accused Product[1]

The Voxer App is a push-to-talk walkie talkie software application that is available for free download from the Apple App Store and the Android Marketplace. Dkt. No. 92-1 Panttaja Decl. ¶ 3. The Voxer App is used to send voice, text, and image messages between Voxernet users. *Id.* at ¶ 4. The Voxer App can be used on the iPhone, iPad, iPod touch, and Android devices such as smartphones and tablets. *Id.* at ¶ 3.

When a user wants to send a voice message on the Voxer App, she records a message which is saved on her device. The message is then sent to the Voxer server, where it is again saved. Finally, the message is sent to the recipient, saved on the recipient's device, and can be played back. All messages are sent asynchronously, although messages can be streamed onto the recipient device to allow for "near real-time" communication. *Id.* at ¶ 8.

### C. Procedural History

On July 2, 2014 the court held a claim construction and summary judgment hearing. Dkt. No. 130. On July 3, 2014 the court issued its Order Construing Disputed Claim Terms, Dkt. No. 131, and Order Granting Summary Judgment, Dkt. No. 132. The court entered summary judgment after finding that there were no disputes of material fact over how the Voxer App worked, and then applied the court's constructions to the accused product. Dkt. No. 132 at 4.

After the court entered judgment, Dkt. No. 134, Voxernet moved for attorney's fees under 35 U.S.C. § 285, Dkt. No. 138. IPVX moved to vacate, alter, amend, or obtain relief from judgment under Federal Rules of Civil Procedure 59(e) or 60(b). Dkt. No. 145.

---

[1] The court describes the Voxer App as it existed on March 31, 2012, the date the '576 Patent expired. At that time, Voxernet's sole product was the Voxer App.

3

## II. PLAINTIFF'S MOTION TO VACATE, ALTER, AMEND OR SET ASIDE JUDGMENT

### A. Legal Standard on Rules 59(e) and 60(b)

Under Federal Rule of Civil Procedure 59(e), a party may move to have the court amend its judgment within twenty-eight days after entry of the judgment. "Since specific grounds for a motion to amend or alter are not listed in the rule, the district court enjoys considerable discretion in granting or denying the motion." *McDowell v. Calderon*, 197 F.3d 1253, 1255 n. 1 (9th Cir. 1999) (en banc) (per curiam) (internal quotation marks omitted). But amending a judgment after its entry remains "an extraordinary remedy which should be used sparingly." *Id.* (internal quotation marks omitted). In general, there are four basic grounds upon which a Rule 59(e) motion may be granted: (1) if necessary to correct manifest errors of law or fact upon which the judgment rests; (2) if necessary to present newly discovered or previously unavailable evidence; (3) if necessary to prevent manifest injustice; or (4) if the amendment is justified by an intervening change in controlling law. *Id.; Allstate Ins. Co. v. Herron*, 634 F.3d 1101, 1111 (9th Cir. 2011). IPVX argues that the court's summary judgment order is "based on manifest error of law and fact" and should be vacated to "prevent manifest injustice."

Rule 60(b)(3) provides that "[o]n motion . . . the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons . . . fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party." "To prevail, the moving party must prove by clear and convincing evidence that the verdict was obtained through fraud, misrepresentation, or other misconduct and the conduct complained of prevented the losing party from fully and fairly presenting the defense." *De Saracho v. Custom Food Machinery, Inc.,* 206 F.3d 874, 880 (9th Cir. 2000). "Federal Rule of Civil Procedure 60(b)(3) require[s] that fraud . . . not be discoverable by due diligence before or during the proceedings." *Pac. & Arctic Ry. and Navigation Co. v. United Transp. Union,* 952 F.2d 1144, 1148 (9th Cir. 1991); *Casey v. Albertson's Inc*, 362 F.3d 1254, 1260 (9th Cir. 2004). IPVX argues that the judgment was procured by fraud, misrepresentation, or misconduct by Voxernet due to the submission of the supplemental declaration of James Pantajja.

4

**B. The Summary Judgment Order is Not Based on Manifest Errors of Law or Fact**

IPVX moves to vacate the summary judgment order that the Voxer App does not literally infringe the '576 Patent. *See* Dkt. No. 145 at 14. IPVX first argues that the court did not "conduct the proper inquiry" when considering whether the Voxer App was a telephone or telephone system. This argument is difficult to understand because IPVX's primary argument at summary judgment was that "the Voxer Application is simply another type of telephone system." Dkt. No. 99-7 at 9. Regardless, the Order Granting Summary Judgment tied the claims as construed to the accused product, which is the proper inquiry on summary judgment. Dkt. No. 132 at 4, 6.  As the court noted, if the Voxer App is not even considered a telephone, it cannot answer telephone calls. *Id.* at 6.

IPVX next argues that the court "overlooked the key RebelVox document" which creates a dispute of material fact precluding summary judgment. The document at issue includes two important statements, according to IPVX. First, a statement about a component of a prior unreleased version of RebelVox.[2] Dkt. No. 145-9 at 2; Dkt. No. 99-5, Ex. L at VKX0002315. IPVX has not presented any evidence to dispute that this component was ever implemented, and appears to abandon its position on that component in its reply brief. Dkt. No. 169-5 at 3.

The second statement in the RebelVox document is that the document characterizes the RebelVox as "indistinguishable from a telephone call . . . ." Dkt. No. 99-5, Ex. L.  IPVX argues that by not considering the statement that the RebelVox is "indistinguishable from a telephone call" the court overlooked a disputed fact. This argument is not persuasive for two reasons.

 First, the court properly construed the facts in the light most favorable to IPVX in its summary judgment order, twice noting that the Voxer App allowed for "near real-time" communication, which is the thrust of the issue that IPVX accuses the court of overlooking. *See* Dkt. No. 132 at 2, 8.

Second, IPVX has still failed to raise any disputed fact, or point to any fact the court

---

[2] The court purposefully leaves out a detailed explanation of the unimplemented RebelVox component to avoid including confidential information in the published order.

5

overlooked, as to how the VoxerApp actually works. In order to literally infringe the claims at issue, the accused method must "automatically answer[] incoming telephone calls." '576 at cls. 3, 18.[3] IPVX has not pointed to any evidence that the Voxer App meets this claim limitation.

Assuming that the RebelVox document details the ways in which the Voxer App functions,[4] simply reading **the complete sentence that IPVX quotes** shows that the Voxer App is "not voicemail" and not "just a telephone call." Dkt. No. 99-5 at VKX0002301. The document then goes on to list **ten (10)** ways in which the messages sent through the Voxer App are not telephone calls. *Id.*; Dkt. No. 165-4 at 7. These are not just "additional functions," Dkt. No. 169-5 at 2, but differences that negate literal infringement. It is clear why IPVX did not rely on this evidence to support its literal infringement arguments.[5] The document speaks for itself in distinguishing the Voxer App from a device that answers incoming telephone calls, or even from a telephone system generally.

The undisputed evidence shows that the Voxer App sends and receives messages; it does not automatically answer incoming telephone calls. To the extent that IPVX believed that one of ordinary skill in the art would have considered sending and receiving messages (even between two phones) to be "automatically answer[ing] incoming telephone calls" it was required to put forth evidence to that effect. It did not. The most IPVX put forth was attorney argument that anything involving voice messages would be considered a telephone. *See, e.g.,* Dkt. No. 137, Hr'g Tr. at 23:18-24:18 (explaining that a voice message received via Microsoft Outlook could be a telephone); *id.* at 25:12-15 ("Well, if we're talking about something that can send audio

---

[3] The court construed this term as "Automatically answering calls made to the telephone associated with the telephone answering device." Dkt. No. 131 at 11.
[4] IPVX states that it makes a "counter-assertion of fact" that the RebelVox document accurately describes the actual implementation of the Voxer App. Dkt. No. 145 at 4. This "counter-assertion of fact" is not supported by any evidence, and therefore is merely attorney argument.
[5] IPVX's suggestion that it only needs to provide infringement evidence tied to specific claim limitations in the context of infringement under the doctrine of equivalents, Dkt. No. 145 at 14, is without merit. *See Mas-Hamilton Group v. LaGard, Inc.*, 156 F.3d 1206, 1211 (Fed. Cir. 1998) ("To prove literal infringement, the patentee must show that the accused device contains every limitation in the asserted claims. If even one limitation is missing or not met as claimed, there is no literal infringement.") (citations omitted).

6

1 information or speech from one location to another, that is the broadest sense of what a telephone
2 is."). That argument, which lacks any evidence support, is not sufficient to survive summary
3 judgment.

4     Instead, Voxernet put forth evidence establishing that the Voxer App was substantially
5 different from a telephone answering system. The summary judgment order was not based on a
6 misapprehension of the law or facts, and IPVX's motion to vacate the judgment on this basis is
7 without merit.

### C. The Supplemental Pantajja Declaration

In support of Voxernet's reply brief on summary judgment, James Panttaja, the Vice President of Corporate Development at Voxer, testified that the RebelVox document "does not reflect the actual operation of the Voxer system at any time" and actually described "an early planned version of the RebelVox system." Dkt. No. 106-6, Panttaja Supp. Decl., at ¶¶ 5,6 (describing the RebelVox document); Dkt. No. 92-1, Panttaja Decl. at ¶ 2 (stating position at Voxer).

IPVX argues that the statement in the supplemental declaration that the RebelVox document "does not reflect the actual operation of the Voxer system at any time" is entitled to little, if any, weight. Dkt. No. 145 at 6. The court recognizes that the supplemental declaration, when read literally, might be construed as contradicting itself. *Compare* ¶ 5 (the RebelVox document does not reflect the Voxer App "at any time") *with* ¶ 7 (explaining that some features from the RebelVox document "remained true in the released version of the Voxer app.").

The court did not rely on Mr. Panttaja's supplemental declaration in rejecting IPVX's argument that the Voxer App literally infringed the asserted claims of the '576 Patent. Even assuming that the RebelVox document described the Voxer App, IPVX failed to present evidence to support infringement of the "automatically answering incoming telephone calls" limitation, among others. As explained above, the RebelVox documents lists at least ten ways which the RebelVox is not a telephone. *See also* Dkt. No. 132 (Summary Judgment Order) at 6 (finding that IPVX did not provide any evidence linking the Voxer App to a telephone system). To the extent

7

that the supplemental declaration was inartfully drafted, it is not a fraud on the court and did not prevent IPVX from presenting its case.

Finally, IPVX's arguments regarding discovery issues are without merit. The court's scheduling order was entered in October 2013 and explicitly ordered that "[s]ummary judgment motions that are reliant upon, or relate or pertain to claim construction, and whether brought by plaintiff or defendant, will be heard at the same time as the claim construction hearing and shall be briefed in accordance with the schedule below." Dkt. No. 63 at 2. IPVX was therefore well aware that summary judgment would be considered at the same time as the claim construction. IPVX should have conducted any necessary discovery to defeat summary judgment, or made a Rule 56(d) motion if it was unable to present its case, well before making a motion to vacate.

Accordingly, IPVX has not shown that the summary judgment order was based on manifest errors of fact or law, would cause a manifest injustice, or was procured by fraud or misconduct. The motion to vacate the judgment is denied.

### III. DEFENDANT'S MOTION FOR ATTORNEY'S FEES

#### A. Legal Standard For Exceptional Cases Under *Octane Fitness*

"The court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285. As the Supreme Court recently clarified, "an 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1756 (2014). The Court elaborated that "[d]istrict courts may determine whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances." *Id.* The Court suggested district courts look to "nonexclusive" factors it previously set forth concerning a similar provision of the Copyright Act, including "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Octane*, 134 S. Ct. at 1756, n.6 (quoting *Forgerty v. Fantasy*, 510 U.S. 517, 534, n.19 (1994)).

8

**B. The Strength of IPVX's Litigating Position**

IPVX's litigation position on infringement was unreasonable. First, it appears that IPVX never expected to prevail on literal infringement. IPVX's first communication with Voxernet in August 2012, after the filing of the complaint, provides some explanation of its infringement position. *See* Dkt. No. 152-8, Ex. F (IPVX Presentation). The IPVX Presentation states that "IPVX contends that the Voxer network is, and quite fundamentally, a telephone answering device which does automatically answer an incoming telephone call." *Id.* at 5. All of IPVX's statements regarding "automatically answering a call" or linking the Voxer App to a telephone network or system are vague and conclusory. *Id.* at 8 (stating that the "answering" "notion" is "implicit").

The IPVX Presentation goes on to repeatedly refer to the Voxer App as performing the "functions" or "functionality" of the claims, which would be an inquiry appropriate to infringement under the doctrine of equivalents. Moreover, the IPVX Presentation does not perform *any* literal infringement analysis of the preamble of the asserted claims as applied to the Voxer App. *See id.* at 18 (only applying doctrine of equivalents analysis to the preamble). IPVX was well aware that the preambles of the claims could be limiting, as a prior court's claim construction found as much. *See Klausner Techs. v. Vonage Holdings Corp.*, No. 2:06-CV-275, 2007 WL 2300789, at *2 n.3 (E.D. Tex. Aug. 7, 2007) (noting that "[t]he parties appear to agree that [terms] contained in the preamble to Claim 3 . . . are limiting and amenable to construction"). The preambles also provide antecedent basis for "each incoming call" and "said memory." *See* Dkt. No. 132 at 5. IPVX should have provided an infringement analysis for the entire claim, including the preamble, if it believed it had a reasonable basis for asserting infringement. It was unreasonable of IPVX to assert literal infringement without comparing the elements of the claim to the accused product in more than a wholly conclusory fashion.

IPVX's literal infringement position was even more unreasonable at the claim construction and summary judgment stage. As the court previously noted, IPVX's position on how its proposed constructions would apply to the Voxer App was absurd and farfetched. Dkt. No. 131 at 7 ("IPVX's position that one of ordinary skill, after reviewing the '576 Patent, would understand it

9

to cover tin-can phones is absurd."); Dkt. No. 124, Hr'g Tr. (technology tutorial) at 9:2 (discussing IPVX's examples of telephones).

IPVX's position on infringement by equivalents was also unreasonable. IPVX had no basis to believe it could prevail on its doctrine of equivalents position when it had not come forward with the required evidence from a person of ordinary skill in the art linking the Voxer App to the claims. *See* Dkt. No. 132 (Summary Judgment Order) at 7, *citing AquaTex Indus., Inc. v. Techniche Solutions*, 479 F.3d 1320, 1329 (Fed. Cir. 2007); accord *Texas Instruments, Inc. v. Cypress Semiconductor Corp.*, 90 F.3d 1558, 1566 (Fed. Cir. 1996); *see also Kilopass Tech. Inc. v. Sidense Corp.*, No. 10-cv-02066 SI, 2014 WL 3956703 (N.D. Cal. Aug. 12, 2014) (awarding fees where infringement positions were unreasonable).

IPVX's central argument in this case—as the court expressly pointed out in the summary judgment order and which IPVX has never backed away from—was that it could convince a fact-finder that one of ordinary skill in the art would consider the Voxer App to be a telephone. IPVX took that position, secured a "plain and ordinary meaning" construction of its claim terms, and then failed to present any evidence to support it, despite knowing that the court would hear summary judgment concurrently with claim construction. *See* Dkt. No. 63 (Case Management Scheduling Order). Failing to develop any evidence to support an infringement position "stands out from others with respect to the substantive strength of a party's litigating position." *Octane Fitness*, 134 S.Ct. at 1756; *see also Homeland Housewares v. Sorensen Research*, CV 11-3720-GW (JEMx), E.C.F. No. 249 (C.D. Cal. June 27, 2013), *aff'd,* No. 2013-1537 (Fed. Cir. Sept. 8, 2014) (non-precedential).[6]

The fact that IPVX primarily prevailed on claim construction does not negate a finding of unreasonableness. As Voxernet points out, "[t]he fact that the Court granted VoxerNet's motion for summary judgment of non-infringement despite adopting some constructions proposed by IPVX only highlights the objective unreasonableness of IPVX's infringement case against

---

[6] The district court in *Homeland Housewares* decided the attorney's fees motion under the earlier *Brooks Furniture* standard, and the Federal Circuit affirmed under the *Octane Fitness* standard.

10

VoxerNet." Dkt. No. 160-4 at 7-8; *Eon-Net LP v. Flagstar Bancorp*, 653 F.3d 1314, 1327 (Fed. Cir. 2011) (affirming award of fees where "[m]eritless cases like this one unnecessarily require the district court to engage in excessive claim construction analysis before it is able to see the lack of merit of the patentee's infringement allegations.").

### C. IPVX's Litigation Conduct

IPVX's litigation conduct also supports a finding that the case "stands out" from others. IPVX essentially prosecuted this case in assembly-line fashion. It served a boilerplate complaint on dozens of defendants. Dkt. No. 1 at ¶ 9; *see also* Dkt. No. 138-4 at 5 n.5 (listing other IPVX cases and complaints). IPVX has never attempted to demostrate that it performed a presuit investigation of the Voxer App. *See Yufa v. TSI Inc.*, 09–CV–01315–KAW, 2014 WL 4071902 (N.D. Cal. Aug.14, 2014) (awarding attorneys' fees and finding case exceptional, in part because the plaintiff "testified that he filed this action without purchasing or testing any of [the] accused products to determine if they infringed . . . [which] suggests that [the plaintiff] did not conduct an adequate investigation prior, at the very least, to filing his first amended complaint"). It "carelessly" served discovery requests that had nothing to do with the Voxer App. *See* Dkt. No. 120 (Order Denying Motion for Bond) at 3 (describing discovery requests that were "cut-and-paste from other litigation and not carefully vetted here."); Dkt. No. 84 (Hr'g Tr. at 15:16-18) (admitting "[IPVX] took the discovery request that we had used in other cases and sort of recreating the wheel. We've been using them in several of the different cases.").

IPVX also relied on claim construction briefings filed against other defendants with dissimilar products than in this case, which did not focus on the most pertinent issues in this case, or respond to Voxernet's proposed constructions, i.e., the construction of "telephone" and "automatically answering incoming telephone calls." Although at the claim construction stage the court does not consider the accused product, the parties are wise to direct the claim construction towards issues that will be helpful in resolving infringement questions. *See Wilson Sporting Goods Co. v. Hillerich & Bradsby Co.*, 442 F.3d 1322, 1331 (Fed. Cir. 2006)

Most importantly, IPVX did not expend the resources necessary to support its positions on infringement. IPVX repeatedly relied on attorney argument where facts were required. As in *Homeland Housewares*,

> developing the evidence would have been simpler, less costly, and potentially more effective than [IPVX's] paper litigation strategy. While the case would not necessarily have been simple had it been litigated properly, it would have either have cleared the threshold hurdle of showing . . . potential infringement, or it would have stopped then. Regardless of the adequacy of its pre-filing investigation or [IPVX's] state of mind, it was clear and convincing misconduct to make [Voxernet] litigate infringement given the state of [IPVX's] evidence of the accused products' [features].

CV 11-3720-GW (JEMx), E.C.F. No. 249 at 8. In fact, even at the summary judgment stage, IPVX still did not have a final infringement theory on whether the Voxer App server or the smart phone's memory was the "telephone answering device," which is a central feature of the asserted claims. *See* Dkt. No. 124, Hr'g Tr., at 12:16-13:9; Dkt. No. 137, Hr'g Tr., at 66:14-21.

Of the dozens of cases IPVX or its predecessor has filed, only this case has reached a decision on the merits. Dkt. No. 160-4 at 12. From the litigation conduct in this case, it appears that IPVX is actually *not* willing to invest the resources to prove up its infringement case. *Eon-Net*, 653 F.3d 1314 at 1327 (noting filing numerous complaints and settling at low value supported a finding of bad faith under pre-*Octane* standard). Deterring similar behavior—filing a patent infringement suit but being unwilling to expend the resources necessary to support the infringement claims—is an appropriate consideration in awarding fees. *Octane*, 134 S. Ct. at 1756, n.6.

### D. Award of Attorney's Fees

If a case is determined to be exceptional by a preponderance of the evidence, *Octane*, 134 S. Ct. at 1758, "[t]he decision whether or not to award fees is still committed to the discretion of the trial judge, and 'even an exceptional case does not require in all circumstances the award of attorney fees.'" *Modine Mfg. Co. v. Allen Group, Inc.*, 917 F.2d 538, 543 (Fed. Cir. 1990). In determining whether to award attorney's fees, the trial judge may consider "the closeness of the case, the tactics of counsel, the conduct of the parties, and any other factors that may contribute to

a fair allocation of the burdens of litigation as between winner and loser." *S.C. Johnson & Son, Inc. v. Carter-Wallace, Inc.*, 781 F.2d 198, 201 (Fed. Cir. 1986).

In its discretion, the court finds that this case warrants attorney's fees. As explained above, IPVX's position on infringement was objectively baseless at the inception of the lawsuit, and IPVX proceeded in this litigation without developing any factual record to support its infringement contentions, either on literal infringement or on infringement under the doctrine of equivalents.

When calculating reasonable attorneys' fee, the court must consider both the reasonableness of the hourly billing rate and the number of hours reasonably required to perform the work. *See Larfarge Conseils Et Etudes, S.A. v. Kaiser Cement & Gypsum Corp.*, 791 F.2d 1334, 1341-42 (9th Cir. 1986) (citations omitted). A reasonable rate times the reasonable hours gives the "presumptively reasonable" amount of fees. *Apple, Inc. v. Samsung Electronics Co.*, C 11-1846 LHK PSG, 2012 WL 5451411 (N.D. Cal. Nov. 7, 2012), *citing Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983); *Kraszewski v. State Farm General Ins. Co.*, Case No. C 79-1261 TEH, 1984 WL 1027, at *5-6 (N.D. Cal. June 11, 1984).

In support of the motion for fees, Voxernet's counsel, Hector Ribera of Fenwick & West, submitted a declaration giving the hourly rates for the attorneys involved in the case and the total number of hours each attorney billed. Dkt. NO. 138-6 (Ribera Decl.). The declaration shows that Fenwick & West billed its lawyers at rates of $295 to $865 per hour and the total number of hours billed was 1782.9 attorney hours.

IPVX contends that the amount of fees requested, now $907,968.16 including cost and fees relating to the instant motions, is "a stunning amount for a case that is still in discovery." Dkt. No. 148 at 23. IPVX does not base its criticism on Fenwick & West's billing rates, which it conceded were reasonable. IPVX also did not ask to review any of the billing statements, not after Fenwick & West offered to produce them, Dkt. No. 160-4 at 14, nor even after the court requested them, Dkt. No. 179, and so does not make any specific challenges to the number of hours billed. IPVX also does not explicitly contend that the number of hours spent on the case was unreasonable.

13

Instead, IPVX's argument is that Voxernet's counsel, Fenwick & West, engaged in block-billing, which would justify "a substantial reduction" to the fees. *Id* at 24. IPVX also objects to non-attorney fees and certain costs.

IPVX's "block billing" concern is not borne out by the record. *See* Dkt. No. 138-7, Ribera Decl. ¶ 17 (explaining Fenwick & West's billing practices). Following the hearing on the motion for fees, Voxernet submitted its billing records *in camera*. Dkt. No. 180. The court reviewed the billing statements. They do not contain block billing and show that all entries are itemized by task.

The amount of attorney hours spent on the case was also reasonable. Voxernet engaged in motion practice designed to bring this case to an early resolution. The case began in the Eastern District of Texas, and Voxernet successfully transferred the case to the Northern District of California. Voxernet also brought a motion for undertaking, seeking to require IPVX to post a bond. Although the court ultimately denied the motion, it was by no means groundless and raised substantial issues. Voxernet prepared and presented a technology tutorial and *Markman* hearing on numerous claim terms. To reach summary judgment, Voxernet also engaged in substantial discovery. Finally, Voxernet had to respond to IPVX's motion to vacate judgment. Based on the work done in the case, the number of hours billed was reasonable. As an objective check, Voxernet's fees are also in line with the American Intellectual Property Law Association's estimates on the cost of defending a patent infringement suit. *See* Dkt. No. 160-11 (AIPLA Economic Survey) at 35.

IPVX further objects to the award of certain costs and fees because Voxernet did not establish that it was common practice in the community to separately bill those expenses. Specifically, IPVX objects hours spent by paralegals, by the discovery management and review department, by the IT staff, and by the library staff. IPVX further objects to characterizing non-taxable costs as "attorney's fees." Dkt. No. 148 at 24-25, n.6.

The court will allow recovery of paralegal and discovery management and review department hours because the records show that those services were used to actually reduce the total amount of fees. *See* Ribera Decl. ¶ 19 (explaining that using discovery management and

14

review attorneys saved money over using mid-level associates for document review). Document review is certainly a service that is customarily billed to clients.

The court will not award fees for the library staff ($114) and IT department ($16,165.50) hours, or non-taxable costs ($71,046.66). Voxernet's declarations in support of its costs and fees, Dkt. Nos. 140-1 (bill of costs) and 138-7 (attorney's fees), establishes that it is common practice for Fenwick & West to separately bill its non-taxable costs, library, and IT hours, but not that it is common practice in the community. Accordingly, the court does not award those costs but does award fees in the amount of **$820,642.00 [=$907,968.16 (total request) - $71,046.66 (costs) - $114 (library) - $16,165.50 (IT)].**

## IV. ORDER

For the reasons explained above, the court denies IPVX's motion to vacate the judgment and grants in part Voxernet's motion for attorney's fees, in the amount of $820,642.00.

Dated: November 6, 2014

_____
HOWARD R. LLOYD
UNITED STATES MAGISTRATE JUDGE